# Exhibit A



LEVINE LEICHTMAN CAPITAL PARTNERS, INC.

July 24, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA 92673
Attention: Michael C. Schreck

Re: ACCS

Dear Mr. Schreck:

Reference is made to the Securities Purchase Agreement dated as of November 10, 2004 (as amended from time to time, the "Securities Purchase Agreement"), by and among ACCS Corp., a Delaware corporation (the "Company"), SCH Corp, a Delaware corporation (the "Parent"), American Corrective Counseling Services, Inc., a California corporation ("ACCS") and Levine Leichtman Capital Partners III, L.P., a California limited partnership, as Purchaser. Unless otherwise indicated, capitalized terms used but not defined herein have the meanings assigned to such terms in the Securities Purchase Agreement.

Pursuant to Section 10.15(a) and Section 10.15(b) of the Securities Purchase Agreement, the Company Parties are required to comply with the Minimum EBITDA and Minimum Fixed Charge Coverage Ratio covenants. In connection therewith, as set forth in Section 1.2(d) of the Securities Purchase Agreement all computations, financial statements and other financial information of the Company Parties shall be determined in accordance with GAAP. Based on our review of the information provided with respect to the Fiscal Quarter ended June 30, 2008, we have significant questions regarding the accounting for certain expenses and therefore the methodology of the calculations of the foregoing financial covenants.

In order to verify the accuracy of these most recent quarterly calculations and the related financial information provided (along with the financial information for the prior three reporting periods), we hereby inform you that pursuant to Section 9.6 of the Securities Purchase Agreement we will send a representative to visit the Company next week to review the Company's books and records. We will submit a reimbursement for such fees, costs and expenses to the Company pursuant to Section 8.6 of the Securities Purchase Agreement as soon as reasonably practicable thereafter.

If it is determined that the Company Parties did not properly account for certain expenses in accordance with GAAP or for any other reason is not in compliance with the

financial covenants, an immediate Event of Default will arise under <u>Section 11.1(c)</u> of the Securities Purchase Agreement. Pursuant to <u>Section 1</u> of each of the Notes upon an Event of Default under the Securities Purchase Agreement interest shall immediately begin to accrue at the Default Interest Rate. Therefore, if an Event of Default is determined to have occurred, each of the Notes will have accrued interest at the Default Interest Rate since July 1, 2008.

Additionally, pursuant to <u>Section 9.3(b)</u> and <u>Section 9.3(f)</u> of the Securities Purchase Agreement the Company Parties were required to deliver the Monthly Reporting Package and a Compliance Certificate by July 20, 2008 for the month ended June 30, 2008. As of the date hereof, the Company Parties have not delivered such Compliance Certificate. The failure to comply with these information reporting covenants constitutes an immediate Event of Default under <u>Section 11.1(c)</u> of the Securities Purchase Agreement. Pursuant to <u>Section 1</u> of each of the Notes upon an Event of Default under the Securities Purchase Agreement interest shall immediately begin to accrue at the Default Interest Rate.

At this time, we fully reserve our right to demand the payment of interest at the Default Interest Rate commencing on the date of the original occurrence of any Event of Default.

This letter is being delivered without prejudice to the rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Stephen Hogan
Chief Financial Officer

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

August 12, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA 92673
Attention: Michael C. Schreck

Re:     <u>Notice of Events of Default</u>

Dear Mr. Schreck:

Reference is made to the Securities Purchase Agreement dated as of November 10, 2004 (as amended from time to time, the "<u>Securities Purchase Agreement</u>"), by and among ACCS Corp., a Delaware corporation (the "<u>Company</u>"), SCH Corp, a Delaware corporation (the "<u>Parent</u>"), American Corrective Counseling Services, Inc., a California corporation ("<u>ACCS</u>"), and Levine Leichtman Capital Partners III, L.P., a California limited partnership (the "<u>Purchaser</u>"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings assigned to such terms in the Securities Purchase Agreement.

As you are aware, pursuant to <u>Section 10.15(a)</u> and <u>Section 10.15(b)</u> of the Securities Purchase Agreement, the Company Parties are required to comply with the "Minimum EBITDA" covenant and the "Minimum Fixed Charge Coverage Ratio" covenant, respectively. In connection therewith, <u>Section 1.2(d)</u> of the Securities Purchase Agreement requires that <u>all</u> computations, financial statements and other financial information of the Company Parties are to be determined on a consolidated basis in accordance with GAAP. Additionally, pursuant to <u>Sections 9.3(b)</u>, <u>(f)</u> and <u>(h)</u> of the Securities Purchase Agreement, the Company is required to deliver to the Purchaser (i) a Monthly Reporting Package, (ii) a related Compliance Certificate and (iii) written notice of the occurrence of any event, act, development or condition which constitutes a Default or Event of Default.

By letter dated July 24, 2008 (the "<u>July Letter</u>"), to the Company, we expressed our concerns with regard to, among other things, the accounting for certain expenses by the Company and the methodology employed by the Company to calculate the

aforementioned financial covenants and, therefore, the accuracy and veracity of (i) the financial information contained in the Monthly Reporting Package for the calendar month ended June 30, 2008, and (ii) the calculation of the "Minimum EBITDA" and "Minimum Fixed Charge Coverage Ratio" financial covenants included in the Monthly Reporting Package. A copy of the July Letter is attached hereto as <u>Exhibit A</u>.

In the July Letter, we exercised our rights pursuant to <u>Section 9.6</u> of the Securities Purchase Agreement to have our representative visit and inspect the Company Parties' books and records. On August 1, 2008, our representative (KPMG) visited the Company to review the relevant books and records. Pursuant to each of the Management Agreements among Equity Pacific Advisors, LLC ("<u>Equity Pacific</u>"), the Company and members of senior management, Equity Pacific receives payment for management services on a monthly basis. Our investigation revealed that it has been the Company's practice to make such monthly payments to Equity Pacific on or about the end of the first two weeks of each month in which such payment is due for services provided and to record a related expense in that month. In June 2008, the Company paid Equity Pacific $55,550 and such payment was processed by the Company's bank on June 9, 2008. Services were provided by the senior management team, however a related expense was not recorded. Instead, the "Prepaid Recruiting" account was debited. Based on the Company's historic accounting practices and GAAP, we believe that such payment should be properly classified as an expense in June 2008 rather than recorded as a prepaid asset. These findings verified our concerns that the Company Parties did not properly account for the payment of certain expenses and failed to comply with <u>Section 1.2(d)</u> of the Securities Purchase Agreement. This resulted in the Company's delivery to us of an inaccurate Monthly Reporting Package for the calendar month ended June 30, 2008. The failure to comply with <u>Section 1.2(d)</u> of the Securities Purchase Agreement and the failure to deliver financial statements in conformity with the requirements of <u>Section 9.3</u> of the Securities Purchase Agreement are each immediate Events of Default under <u>Section 11.1(c)(ii)</u> of the Securities Purchase Agreement.

Furthermore, due to this improper accounting and the failure by the Company to comply with <u>Section 1.2(d)</u> of the Securities Purchase Agreement, the calculations of the "Minimum EBITDA" and "Minimum Fixed Charge Coverage Ratio" covenants set forth in the Monthly Reporting Package delivered to us for the calendar month ended June 30, 2008, a copy of which is attached hereto as <u>Exhibit B</u>, were inaccurate. The calculations did not properly reflect the actual financial performance of the Company Parties and failed to properly reflect that the Company Parties were not in compliance with the "Minimum EBITDA" and "Minimum Fixed Charge Coverage Ratio" covenants. The failure to comply with <u>Section 1.2(d)</u> of the Securities Purchase Agreement and the failure to deliver accurate information (and a required Compliance Certificate) as required by <u>Section 9.3</u> of the Securities Purchase Agreement are each immediate Events of Default under <u>Section 11.1(c)(ii)</u> of the Securities Purchase Agreement. In addition, the Company's failure to provide us with written notice of the above referenced Events of Default is an independent Event of Default under <u>Section 11.1(c)(ii)</u> of the Securities Purchase Agreement.

Additionally, the Company failed to deliver a Compliance Certificate in connection with the Monthly Reporting Package as required by <u>Section 9.3(f)</u> of the Securities Purchase Agreement. Such failure is an immediate Event of Default under <u>Section 11.1(c)(ii)</u> of the Securities Purchase Agreement.

Consequently, we hereby inform you that Events of Default have occurred and are continuing and that, pursuant to <u>Section 1</u> of each of the Notes, interest shall have been deemed to accrue at the Default Interest Rate from the occurrence of the first of such Events of Default. Therefore, each of the Notes has accrued interest at the Default Interest Rate since July 1, 2008. We expect to receive payment on August 29, 2008, of an aggregate sum of $569,767.96 which is comprised of (i) accrued and unpaid default interest of $52,689.37 for the period from July 1, 2008 to July 30, 2008, (ii) scheduled interest at the base rate of $431,019.28 for the period August 1, 2008 to August, 31, 2008, (iii) default interest of $79,034.06 for the period July 31, 2008 through and including August 29, 2008, and (iv) default interest of $7,025.25 for the period August 30, 2008 through and including August 31, 2008. Attached hereto as <u>Exhibit C</u> is a calculation of clauses (i) through (iv) above. Please be advised that the failure to pay these amounts by August 29, 2008, shall be an immediate payment default under <u>Section 11.1(a)</u> of the Securities Purchase Agreement.

Additionally, all of the costs, fees and expenses incurred by us under <u>Section 8.6</u> of the Securities Purchase Agreement and <u>Section 14</u> of the Notes related to our review of the Company Parties' books and records shall be due and payable immediately upon the receipt of the invoice related to such costs, fees and expenses. Attached hereto as <u>Exhibit D</u> is an invoice from KPMG for the work it completed to review the Company Parties' books and records. Please pay this sum by 2:00 P.M. (Pacific time) on August 14, 2008. Please be advised that the failure to pay such amount by such time shall be a payment default pursuant to <u>Section 11.1(a)</u> and <u>Section 11.1(b)</u> of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved, including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude

- 3 -

any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:    Ken Cera
       Mitchell Cohen

- 4 -



LEVINE LEICHTMAN CAPITAL PARTNERS, INC.

Exhibit A                                                        July 24, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA 92673
Attention: Michael C. Schreck

Re: <u>ACCS</u>

Dear Mr. Schreck:

Reference is made to the Securities Purchase Agreement dated as of November 10, 2004 (as amended from time to time, the "<u>Securities Purchase Agreement</u>"), by and among ACCS Corp., a Delaware corporation (the "<u>Company</u>"), SCH Corp, a Delaware corporation (the "<u>Parent</u>"), American Corrective Counseling Services, Inc., a California corporation ("<u>ACCS</u>") and Levine Leichtman Capital Partners III, L.P., a California limited partnership, as Purchaser. Unless otherwise indicated, capitalized terms used but not defined herein have the meanings assigned to such terms in the Securities Purchase Agreement.

Pursuant to <u>Section 10.15(a)</u> and <u>Section 10.15(b)</u> of the Securities Purchase Agreement, the Company Parties are required to comply with the Minimum EBITDA and Minimum Fixed Charge Coverage Ratio covenants. In connection therewith, as set forth in <u>Section 1.2(d)</u> of the Securities Purchase Agreement all computations, financial statements and other financial information of the Company Parties shall be determined in accordance with GAAP. Based on our review of the information provided with respect to the Fiscal Quarter ended June 30, 2008, we have significant questions regarding the accounting for certain expenses and therefore the methodology of the calculations of the foregoing financial covenants.

In order to verify the accuracy of these most recent quarterly calculations and the related financial information provided (along with the financial information for the prior three reporting periods), we hereby inform you that pursuant to <u>Section 9.6</u> of the Securities Purchase Agreement we will send a representative to visit the Company next week to review the Company's books and records. We will submit a reimbursement for such fees, costs and expenses to the Company pursuant to <u>Section 8.6</u> of the Securities Purchase Agreement as soon as reasonably practicable thereafter.

If it is determined that the Company Parties did not properly account for certain expenses in accordance with GAAP or for any other reason is not in compliance with the

financial covenants, an immediate Event of Default will arise under <u>Section 11.1(c)</u> of the Securities Purchase Agreement. Pursuant to <u>Section 1</u> of each of the Notes upon an Event of Default under the Securities Purchase Agreement interest shall immediately begin to accrue at the Default Interest Rate. Therefore, if an Event of Default is determined to have occurred, each of the Notes will have accrued interest at the Default Interest Rate since July 1, 2008.

Additionally, pursuant to <u>Section 9.3(b)</u> and <u>Section 9.3(f)</u> of the Securities Purchase Agreement the Company Parties were required to deliver the Monthly Reporting Package and a Compliance Certificate by July 20, 2008 for the month ended June 30, 2008. As of the date hereof, the Company Parties have not delivered such Compliance Certificate. The failure to comply with these information reporting covenants constitutes an immediate Event of Default under <u>Section 11.1(c)</u> of the Securities Purchase Agreement. Pursuant to <u>Section 1</u> of each of the Notes upon an Event of Default under the Securities Purchase Agreement interest shall immediately begin to accrue at the Default Interest Rate.

At this time, we fully reserve our right to demand the payment of interest at the Default Interest Rate commencing on the date of the original occurrence of any Event of Default.

This letter is being delivered without prejudice to the rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Stephen Hogan
Chief Financial Officer

Exhibit B



**EBITDA**

| | | 1Q07 | 2Q07 | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 4Q Rolling 4Q |
|---|---|---|---|---|---|---|---|---|
| A | Net income before PIK dividend | 688,830 | (66,279) | (504,219) | (766,125) | 451,736 | (572,761) | (1,231,383) |
| B | Interest expense deducted in determining pre-tax income | 1,436,557 | 1,368,530 | 1,320,410 | 1,320,440 | 1,356,116 | 1,397,019 | 5,354,455 |
| C | Taxes deducted in determining pre-tax income | 335,790 | (112,280) | (327,020) | (632,657) | 30,888 | (240,293) | (807,344) |
| D | Depreciation and amortization expense | 526,089 | 527,725 | 526,539 | 522,102 | 571,700 | 578,840 | 2,268,146 |
| E | All amounts under Like fee agreement | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 225,000 |
| E | Extraordinary non-cash losses / capitalized deal expenses | | | | | | | |
| G | Extraordinary or unusual cash or non-cash gains | | | | | | | |
| H | Excess of D&O insurance over 25,000 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 17,000 |
| I | Excess of audit over 45,000 (2005) and 80,000 (2006) | 75,000 | 75,000 | 75,000 | 50,000 | | | 125,000 |
| J | Acdtodc Brownstein success fee | | 1,883 | 76,382 | 326,006 | | | 403,388 |
| K | Acdtodc Debt-related expenses | 27,755 | 53,471 | 120,804 | 283,602 | 89,026 | 696,281 | 1,189,713 |
| L | Acdtodc internally-covered legal expense | | | | | | | |
| M | EBITDA (A+B+C+D+E+F+G+H+I+J+K+L) | 3,119,071 | 1,948,201 | 1,365,884 | 1,692,594 | 2,880,721 | 2,063,911 | 7,342,130 |
| N | EBITDA covenant | | | | | | | 7,333,233 |
| O | EBITDA cushion | | | | | | | 9,377 |

**FIXED CHARGE**

| | | 1Q07 | 2Q07 | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 4Q Rolling 4Q |
|---|---|---|---|---|---|---|---|---|
| | EBITDA from above | 3,119,071 | 1,948,201 | 1,365,884 | 1,692,594 | 2,880,721 | 2,063,911 | 7,342,130 |
| A | Cash interest expense (less 1 point of notes beginning 11/2005) | 1,084,724 | 1,093,925 | 1,111,826 | 1,052,514 | 1,158,596 | 1,127,050 | 4,549,538 |
| B | Scheduled payments of principal | | | | | | | |
| C | Scheduled capitalized lease obligations | | | | | | | |
| D | Taxes estimated for period | 303,827 | 18,525 | 8,863 | 8,248 | 13,712 | 10,576 | 41,400 |
| E | All amounts paid or payable under Like Fee Agreement | 119,300 | | | | | | |
| F | Capital dividends or distributions | | | | | | | |
| G | Capital expenditures | 18,430 | 37,889 | | 36,077 | | 202,631 | 283,708 |
| | Fixed charge ratio (A/ (B+C+D+E+F+G+H)) | | | | | | | 1.52 |
| I | Fixed charge ratio covenant | | | | | | | 1.11 |
| K | Fixed charge ratio overcant | | | | | | | 0.41 |
| | Fixed charge cushion | | | | | | | |

**CAPEX**

| | | 1Q07 | 2Q07 | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 4Q Rolling 4Q |
|---|---|---|---|---|---|---|---|---|
| A | Capital expenditures | 18,430 | 37,889 | | 36,077 | | 202,631 | 258,708 |
| B | Capital expenditure covenant | | | | | | | 600,000 |
| C | Capital expenditure cushion | | | | | | | 361,292 |

**CHECKS PROCESSED**

| | | 1Q07 | 2Q07 | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 4Q Rolling 4Q |
|---|---|---|---|---|---|---|---|---|
| A | Checks processed | 184,442 | 130,461 | 164,572 | 156,819 | 171,749 | 186,056 | 639,807 |
| B | Maximum cumulative checks processed | | | | | | | 639,807 |
| C | Checks processed cushion | | | | | | | 637 |

**POPULATION SERVED**

| | | 1Q07 | 2Q07 | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 4Q Rolling 4Q |
|---|---|---|---|---|---|---|---|---|
| A | Total population served | 61,084,653 | 63,173,369 | 66,654,379 | 66,082,286 | 71,847,281 | 73,338,928 | |
| B | Minimum population served | 59,000,000 | 55,000,000 | 57,000,000 | 57,000,000 | 59,000,000 | 59,000,000 | |
| C | Population served cushion | | | | | | | 14,338,928 |

Exhibit C

American Corrective Counselling Services Inc.
Regular & Default Interest Calculation
for the month ended August 31, 2008

|  |  | Interest Rate | Default Rate | All-in-All Rate |
|---|---|---|---|---|
| Secured Senior Term A Discount Note | $ 23,044,475.95 |  |  |  |
| Secured Senior Term B Discount Note | 5,761,119.25 |  |  |  |
| Securred Senior Term C Note | 2,808,029.42 |  |  |  |
|  | $ 31,613,624.62 |  |  |  |
|  |  |  |  |  |
| Default Interest - July 1 - July 30 | 52,689.37 | 15.833% | 2.0% | 17.833% |
| Default Interest - July 31 - Aug 29 | 79,034.06 | 15.833% | 3.0% | 18.833% |
| Default Interest - Aug 30 - Aug 31 | 7,025.25 | 15.833% | 4.0% | 19.833% |
| Total Default Interest | 138,748.68 |  |  |  |
| Regular Interest - August | 431,019.28 |  |  |  |
| TOTAL INTEREST DUE | 569,767.96 |  |  |  |



Exhibit D

Date:   August 12, 2008
Invoice: 43175146

MS. KIMBERLY POLLACK, MANAGING DIRECTOR
LEVINE LEICHTMAN CAPITAL PARTNERS
335 N. MAPLE DRIVE, SUITE 240
BEVERLY HILLS, CA 90210

| REMITTANCE INFORMATION | |
|---|---|
| CHECKS | ACH/WIRE PMTS |
| KPMG LLP | The Bank of New York Mellon |
| Dept 0939 | 500 Ross St., Rm 0940 |
| P.O. Box 120001 | Pittsburgh, PA  15262 |
| Dallas, TX  75312-0922 | ABA# 04300-0261 |
| | Acct# 0342289 |
| TIN: 13-5565207 | Swift Code: MELNUS3P |

Services rendered inside the US
Business Unit:   US147
Project: 11757549/ja

Client Number:   60242331
BP: Omid Yazdi

EM: Johnny Giang

For services provided related to American Corrective Counseling Services' debt convenants compliance.

| Name | Level | Hours | Rate | Total |
|---|---|---|---|---|
| Omid Yazdi | Managing Director | 5.5 | $600 | $3,300 |
| Johnny Giang | Director | 12.0 | $575 | 6,900 |
| Tammie Davis | Manager | 17.3 | $475 | 8,218 |
| Total Fees Due | | | | 18,418 |
| | | | | |
| Less Professional Discount | | | | (3,418) |
| Total | | 34.8 | | $15,000 |

Total Due          $15,000

If you have any questions regarding this invoice, please contact Omid Yazdi at (213) 430-2119.

KPMG LLP, a U.S. limited liability partnership,
is the U.S. member firm of KPMG International, a Swiss cooperative.

Please Enclose Remittance Copy Or
Reference Our Invoice # With Payment.

Payment Due
Upon Receipt.

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

September 2, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA 92673
Attention: Michael C. Schreck

Re: <u>Notice of Additional Event of Default</u>

Dear Mr. Schreck:

We are in receipt of your letter dated August 29, 2009. Unless otherwise indicated, capitalized terms used but not defined herein have the meanings assigned to such terms in the Securities Purchase Agreement.

We make reference to the letters we sent you dated July 24, 2008 (the "<u>July Letter</u>") and August 12, 2008 (the "<u>August Letter</u>"). We hereby reaffirm all of our concerns, findings, statements of facts and conclusions described in both the July Letter and the August Letter and advise you that we disagree with the positions taken in your letter. Regardless of what you may believe is "[I]n the best interest of the Company," the Company must still abide by its contractual commitments in the Securities Purchase Agreement (and the other Investment Documents), including, without limitation, the requirement that all computations, financial statements and other financial information of the Companies Parties be determined in accordance with GAAP.

In addition, we hereby reaffirm that the Events of Default described in the August Letter have occurred and are continuing and that, pursuant to <u>Section 1</u> of each of the Notes, interest at the Default Interest Rate has been accruing since July 1, 2008, the date of occurrence of the first of such Events of Default.

On August 29, 2008, you failed to make a required additional payment to us in the aggregate sum of $138,748.68 (the "<u>Owed Default Interest</u>"). As set forth in the August Letter, the Owed Default Interest is comprised of (i) accrued and unpaid default interest of $52,689.37 for the period from July 1, 2008 to July 30, 2008, (ii) accrued and unpaid default interest of $79,034.06 for the period July 31, 2008 through and including August 29, 2008, and (iii) default interest of $7,025.25 for the period August 30, 2008 through and including August 31, 2008. The failure to pay the Owed Default Interest to us on August 29, 2008, constitutes an immediate payment default under <u>Section 11.1(a)</u> of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved, including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:    Ken Cera
       Mitchell Cohen

- 2 -

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

October 22, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA  92673
Attention:  Michael C. Schreck

Re:    <u>Notice of Additional Event of Default</u>

Dear Mr. Schreck:

We are in receipt of your "Compliance Certificate" dated October 20, 2008, a copy of which is attached hereto as <u>Exhibit A</u>.  Unless otherwise indicated, capitalized terms used but not defined herein have the meanings assigned to such terms in the Securities Purchase Agreement.

We make reference to the letters we sent you dated July 24, 2008 (the "<u>July Letter</u>"), August 12, 2008 (the "<u>August Letter</u>") and September 2, 2008 (the "<u>September Letter</u>").  We hereby reaffirm all of our concerns, findings, statements of facts and conclusions described in each of the July Letter, the August Letter and the September Letter.

Pursuant to <u>Section 10.15(a)</u> of the Securities Purchase Agreement, the Company Parties are required to comply with the Minimum EBITDA covenant for each Quarterly Period set forth therein.  For the Quarterly Period ended September 30, 2008 the Company Parties were required to have generated EBITDA of no less than $7,569,312.  As set forth on line "M" of Exhibit A of the attached Compliance Certificate, the Company Parties indicated that EBITDA of only $7,441,048 was generated for the Quarterly Period ended September 30, 2008, therefore failing to comply with the Minimum EBITDA covenant for such Quarterly Period and resulting in a new Event of Default under <u>Section 11.1(c)</u> of the Securities Purchase Agreement.  Additionally, for the reasons set forth in the August Letter we continue to believe that EBITDA is in fact even lower than the number provided by you in the attached Compliance Certificate.

In addition, we hereby reaffirm that the Events of Default described in the August Letter and the September Letter have occurred and are continuing and that, pursuant to <u>Section 1</u> of each of the Notes, interest at the Default Interest Rate has been accruing since July 1, 2008, the date of occurrence of the first of such Events of Default.

On September 30, 2008, you failed to make a required additional payment to us in the aggregate sum of $248,184.62 (the "<u>Cumulative Owed Default Interest</u>").  The

Cumulative Owed Default Interest is comprised of (i) accrued and unpaid default interest of $52,689.37 for the period from July 1, 2008 to July 30, 2008, (ii) accrued and unpaid default interest of $79,034.06 for the period July 31, 2008 through and including August 29, 2008, (iii) accrued and unpaid default interest of $7,025.25 for the period August 30, 2008 through and including August 31, 2008, (iv) accrued and unpaid default interest of $107,135.06 for the period September 1, 2008 through and including September 30, 2008 and (v) interest on the unpaid default interest for the periods set forth (i) to (iii) of $2,300.88. The failure to pay the Cumulative Owed Default Interest to us on September 30, 2008, constitutes an immediate payment default under <u>Section 11.1(a)</u> of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved, including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:   Ken Cera
      Mitchell Cohen

-2-

## EXHIBIT A

**(see attached)**

**ACCS CORP.**

**COMPLIANCE CERTIFICATE**

To:    LEVINE LEICHTMAN CAPITAL PARTNERS III, L.P.
       c/o Levine Leichtman Capital Partners, Inc.
       335 North Maple Drive, Suite 240
       Beverly Hills, CA 90210

      Reference is made to that certain Securities Purchase Agreement dated as of November 10, 2004 (the "Securities Purchase Agreement"), by and among SCH CORP., a Delaware corporation, ACCS CORP., a Delaware corporation (the "Company"), AMERICAN CORRECTIVE COUNSELING SERVICES, INC., a California corporation, and LEVINE LEICHTMAN CAPITAL PARTNERS III, L.P., a California limited partnership (the "Purchaser"). Unless otherwise indicated, all capitalized terms used herein without definition shall have the meanings ascribed to them in the Securities Purchase Agreement. To the extent that there is a conflict between the terms used in this Compliance Certificate and the terms defined in the Securities Purchase Agreement, the terms used in the Securities Purchase Agreement shall control.

      This Compliance Certificate is being delivered to the Purchaser pursuant to Section 9.3(f) of the Securities Purchase Agreement and relates to certain consolidated financial statements of Parent and its Subsidiaries (the "Financial Statements") as of and for the Fiscal Quarter ended September 30, 2008 (the "Financial Statements Date"). The undersigned is the President and Chief Executive Officer of the Company and hereby certify to the Purchaser that:

1.    We have reviewed the terms of the Securities Purchase Agreement and the other Investment Documents and the consolidated financial statements of Parent and its Subsidiaries for the accounting period covered by the Financial Statements, and have made, or caused to be made under our supervision, a review in reasonable detail of the transactions and condition of Parent and its Subsidiaries during such accounting period for the purposes of delivering this Compliance Certificate.

2.    No Default or Event of Default existed during the accounting period covered by the Financial Statements or as of the Financial Statement Date, and we do not have any knowledge of the existence of any Default or Event of Default as of the date of this Compliance Certificate, except as noted in the financial covenant calculations attached as Exhibit A.

3.    The financial covenant calculations attached as Exhibit A hereto accurately and completely represent amounts required to be calculated for the accounting period covered by the Financial Statements or as of the Financial Statement Date, as the case may be.

      IN WITNESS WHEREOF, each of the undersigned has executed this Compliance Certificate as of the 20th day of October, 2008.

                    Michael Schreck
                    President and Chief Executive Officer

**EBITDA**

| | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 3Q08 | 3QTTM |
|---|---|---|---|---|---|---|
| A Net income before PIK dividend | (504,219) | (786,426) | 451,756 | (572,761) | (372,741) | (1,080,657) |
| B Interest expense deducted in determining pre-tax income | 1,326,410 | 1,324,412 | 1,324,116 | 1,357,659 | 1,446,722 | 5,483,567 |
| C Taxes deducted in determining pre-tax income | (327,282) | (933,657) | 302,693 | (740,296) | (333,289) | (923,651) |
| D Depreciation and amortization expense | 536,539 | 533,102 | 571,700 | 578,840 | 583,200 | 2,267,842 |
| E All amounts under Dive Fee Agreement | 75,000 | 75,000 | 75,000 | | | 150,000 |
| F Extraordinary non-cash losses / capitalized deal expenses | | | | | | - |
| G Extraordinary or unusual cash or non-cash gains | | | | | | - |
| H Excess of D&O insurance over 25,000 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 17,000 |
| I Excess of such over 45,000 (2005) and 60,000 (2006) | | | | | | - |
| J Add/add: Permissible source fee | 75,000 | 50,000 | | | | 50,000 |
| K Add/add: Debt-related expenses | 76,301 | 304,008 | 88,026 | 686,281 | 58,682 | 326,006 |
| L Add/add: Indemnity-covered legal expense | 320,884 | 263,302 | | | | 1,040,341 |
| M EBITDA (A+B+C+D+E+F+G+H+I+J+K+L) | 1,365,894 | 1,092,864 | 2,870,721 | 2,063,511 | 1,463,932 | 7,441,048 |
| N EBITDA constant | | | | | | 7,559,332 |
| O EBITDA cushion | | | | | | (128,264) |

**FIXED CHARGE**

| | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 3Q08 | 3QTTM |
|---|---|---|---|---|---|---|
| A EBITDA from above | 1,365,894 | 1,092,864 | 2,862,721 | 2,063,511 | 1,463,932 | 7,441,048 |
| B Cash interest expense (less 1 point of terms beginning 11/20/07 | -1,111,526 | -1,953,114 | -1,153,546 | -1,227,050 | -1,374,154 | -4,715,566 |
| C Scheduled payments of principal | | | | | | - |
| D Scheduled capitalized lease obligations | | | | | | - |
| E Taxes estimated for period | 8,863 | 8,249 | 13,712 | 10,076 | 13,440 | 46,197 |
| F All amounts paid or payable under Dive Fee Agreement | | | | | | - |
| G Cash dividends or distributions | | | | | | - |
| H Capital expenditures | | 34,077 | | 204,831 | 122,446 | 361,157 |
| J Fixed Charge ratio (A / (B+C+D+E+F+G+H) ) | | | | | | 1.45 |
| K Fixed charge ratio constant | | | | | | 1.30 |
| L Fixed charge cushion | | | | | | 0.15 |

**CAPEX**

| | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 3Q08 | 3QTTM |
|---|---|---|---|---|---|---|
| A Capital expenditures | | 34,077 | | 204,831 | 122,446 | 361,157 |
| B Capital expenditures covenant | | | | | 600,000 | 600,000 |
| C Capital expenditures cushion | | | | | 274,926 | |

**CHECKS PROCESSED**

| | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 3Q08 | 3QTTM |
|---|---|---|---|---|---|---|
| A Checks processed | 144,571 | 164,049 | 179,344 | 165,844 | 166,253 | 661,530 |
| B Minimum cumulative checks processed | | | | | | 653,000 |
| C Checks processed cushion | | | | | | 8,529 |

**POPULATION SERVED**

| | 3Q07 | 4Q07 | 1Q08 | 2Q08 | 3Q08 | 3QTTM |
|---|---|---|---|---|---|---|
| A Total population served | 66,654,579 | 56,697,258 | 71,340,283 | 75,314,508 | 73,815,464 | 661,530 |
| B Minimum population served | 57,000,000 | 57,000,000 | 59,000,000 | 61,000,000 | 61,000,000 | 61,000,000 |
| C Population served cushion | | | | | 12,815,464 | |

| | Q | Type | TTM | Delta |
|---|---|---|---|---|
| NB: | 155,490 | without collection | 646,717 | (8,283) |
| | 159,321 | with collection | 652,798 | (0.2) |
| | 170,577 | w/ collection, club disc, contr-ordered | 652,674 | (0.04) |
| | 163,253 | wolf =no longer, to PT | 661,535 | 8,533 |
| | | TTM with NL no longer, to PT | 661,530 | 8,530 |

NB: MdXang providing 3Q member Monday

Balance Sheet as of September 30, 2008
Consolidated: ACCS, Inc. / ACCS Corp / SCH Corp

| | Dec 31, 07 | Sept 31, 08 | Budget | Delta |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| General Account Cash | 3,202,222 | 717,172 | 3,626,677 | (2,909,505) |
| Deposits in Transit | 260,067 | 794,775 | - | 794,775 |
| Deferred Tax Asset | 19,034 | 19,034 | (86,214) | 105,248 |
| Receivable | 272,104 | 2,136,580 | - | 2,136,580 |
| Other Prepaid Assets | 26,220 | 165,876 | 50,000 | 115,876 |
| Prepaid Insurance | 53,199 | 30,005 | 32,392 | (2,397) |
| Prepaid Libra Services | 278,763 | 164,735 | - | 164,735 |
| Salary Advances | 43,428 | 89,189 | 25,000 | 64,188 |
| **Total Current Assets** | 4,145,058 | 4,117,348 | 3,647,855 | 469,493 |
| | | | | |
| **Fixed Assets** | | | | |
| Furniture & Fixtures | 67,869 | 70,987 | 202,869 | (131,882) |
| PPE | 496,603 | 886,293 | 529,696 | 356,597 |
| Accumulated Depreciation | (271,852) | (380,269) | (442,432) | 62,163 |
| **Total Fixed Assets** | 292,620 | 577,011 | 290,133 | 286,878 |
| **Other Assets** | | | | |
| Investment in Subsidiary - Net | 31,035,144 | 29,866,644 | 31,164,977 | (1,298,333) |
| Non Compete Contract - Net | 495,000 | 292,500 | 292,500 | - |
| Deferred Financing Cost - Net | 347,788 | 205,513 | 235,976 | (30,463) |
| Deposits | 33,500 | 238,500 | 33,500 | 205,000 |
| **Total Other Assets** | 31,911,432 | 30,603,157 | 31,726,953 | (1,123,796) |
| **TOTAL ASSETS** | 36,349,109 | 35,297,516 | 35,664,941 | (367,425) |
| **LIABILITIES & EQUITY** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable | 722,320 | 1,405,542 | 543,928 | 862,614 |
| Accrued Expenses | 103,612 | 68,450 | 108,901 | (40,451) |
| Accrued Payroll Liabilities | 189,506 | 430,665 | 93,101 | 337,564 |
| Accrued Payroll Taxes | 10,039 | - | 10,000 | (10,000) |
| Accrued Seller Interest | 66,712 | 76,822 | - | 76,822 |
| **Total Current Liabilities** | 1,092,190 | 1,981,479 | 755,930 | 1,225,549 |
| | | | | |
| **Long Term Liabilities** | | | | |
| Senior Debt Face | 28,806,595 | 31,613,625 | 31,613,624 | 1 |
| OID | (1,250,834) | (739,129) | (739,130) | 1 |
| Meeting Note | 1,500,000 | 1,500,000 | 1,500,000 | - |
| Heaney Note | 250,000 | 250,000 | 250,000 | - |
| Wellner Note | 750,000 | 750,000 | 750,000 | - |
| Put Warrants | 2,612,631 | 2,612,631 | 2,017,302 | 595,329 |
| Deferred Tax Liability | 2,454,699 | 2,250,976 | 3,752,338 | (1,501,360) |
| **Total Long Term Liabilities** | 35,122,283 | 38,238,305 | 39,144,134 | (905,829) |
| **Total Liabilities** | 36,204,473 | 40,219,784 | 39,900,064 | 319,720 |
| | | | | |
| **Equity** | | | | |
| Preferred Equity | 4,730,930 | - | - | - |
| PIK Additions | 69,137 | - | - | - |
| Common Stock | 1,249,571 | 1,249,571 | 1,248,093 | 1,478 |
| Retained Earnings | (4,593,899) | (5,081,982) | (5,837,351) | (444,631) |
| Current Period Income | (1,301,102) | (89,857) | 154,195 | (243,992) |
| **Total Equity** | 144,636 | (4,922,265) | (4,235,123) | (687,146) |
| **TOTAL LIABILITIES & EQUITY** | 36,349,109 | 35,297,516 | 35,664,941 | (367,425) |

September 2008 Income Statement
Consolidated: ACCS, Inc. / ACCS Corp / SCH Corp

| | | Sept 08 | Budget | Delta | | YTD | YTD Budget | Delta |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| Revenue | | 1,586,078 | 1,957,377 | (371,300) | | 15,703,556 | 16,567,936 | (864,381) |
| Total Revenue | | 1,586,078 | 1,957,377 | (371,300) | | 15,703,556 | 16,567,936 | (864,381) |
| **Expense** | | | | | | | | |
| Staffing & Related | | 677,090 | 729,350 | (52,261) | | 5,945,507 | 6,472,532 | (527,026) |
| Marketing & Sales | | 45,318 | 41,125 | 4,193 | | 376,020 | 280,125 | 95,895 |
| Administrative | | 119,942 | 109,355 | 10,587 | | 1,175,036 | 972,356 | 202,678 |
| Rent | | 53,231 | 56,966 | (3,735) | | 533,270 | 533,972 | (702) |
| Telephone | | 30,715 | 26,333 | 4,382 | | 259,412 | 236,998 | 22,414 |
| Printing & Mailing | | 129,835 | 125,864 | 3,951 | | 1,085,712 | 1,190,263 | (104,551) |
| Total Expense | | 1,056,131 | 1,089,013 | (32,882) | | 9,374,957 | 9,686,248 | (311,291) |
| | Adjusted EBITDA | 529,947 | 868,364 | (338,417) | | 6,328,598 | 6,881,688 | (553,090) |
| Non-Recurring Expense | | 5,509 | 67,500 | (61,991) | | 843,940 | 574,168 | 269,772 |
| | EBITDA | 524,437 | 800,864 | (276,427) | | 5,484,659 | 6,307,520 | (822,861) |
| Depreciation & Amortization | | 182,395 | 175,000 | 7,395 | | 1,821,692 | 1,575,000 | 46,692 |
| | EBIT | 342,043 | 625,864 | (283,821) | | 3,662,967 | 4,732,520 | (869,553) |
| **Financing Expenses** | | | | | | | | |
| Seller Interest Expense | | - | - | - | | 19,110 | - | 19,110 |
| LLCP Interest Expense | | 417,115 | 377,607 | 39,508 | | 3,642,942 | 3,448,611 | 193,891 |
| OID Amortization Expense | | 56,856 | 56,856 | 0 | | 511,705 | 511,704 | 0 |
| Deferred Financing Amortization | | 12,672 | 12,762 | (90) | | 114,048 | 114,856 | (810) |
| | EBT | (144,601) | 178,639 | (323,240) | | (424,537) | 657,147 | (1,081,884) |
| **Taxes** | | | | | | | | |
| Property Tax | | - | 1,250 | (1,250) | | 6,100 | 11,250 | (5,150) |
| State Tax | | 5,161 | 6,250 | (1,089) | | 31,949 | 56,250 | (24,301) |
| Provision for Income Tax | | (59,905) | 17,004 | (76,909) | | (203,712) | 153,936 | (356,748) |
| | Net Income before PIK Dividend | (89,857) | 154,135 | (243,992) | | (258,875) | 435,611 | (695,486) |
| LLCP PIK Dividend Expense | | - | - | - | | 17,963 | - | 17,963 |
| | Net Income after LLCP PIK Dividend | (89,857) | 154,135 | (243,992) | | (276,838) | 435,611 | (713,449) |

September 2008 Cash Flow Statement
Consolidated: ACCS, Inc. / ACCS Corp / SCH Corp

|  | Sept 08 | Budget | Delta | YTD |
|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | |
| Net Income | (89,857) | 154,135 | (243,992) | (276,838) |
|  | | | | |
| **CHANGES IN:** | | | | |
| Deferred Taxes | (59,905) | 19,002 | (78,907) | (203,712) |
| Receivables | 567,399 | - | 567,399 | (1,864,456) |
| Other Prepaid Assets | (62,356) | - | (62,356) | (139,658) |
| Prepaid Insurance | 27,643 | - | 27,643 | 23,194 |
| Prepaid Libra Services | 12,672 | - | 12,672 | 114,048 |
| Salary Advances | (8,900) | - | (8,900) | (45,760) |
| Accounts Payable | (700,882) | - | (700,882) | 884,222 |
| Accrued Payroll | 61,258 | - | 61,258 | 231,119 |
| Accrued Expenses | (3,581) | - | (3,581) | (35,162) |
| Accrued Seller Interest | - | - | - | 19,110 |
| Net cash provided by Operating Activities | (256,508) | 173,137 | (429,645) | (1,493,893) |
|  | | | | |
| **INVESTING ACTIVITIES** | | | | |
| Furniture & Fixtures | - | (15,000) | 15,000 | (3,118) |
| PPE | (4,090) | (10,000) | 5,910 | (389,690) |
| Accumulated Depreciation | 14,253 | - | 14,253 | 108,417 |
| Accumulated Amortization | 152,333 | 175,000 | (22,667) | 1,371,000 |
| Deferred Financing Cost | 15,808 | 12,762 | 3,046 | 142,275 |
| Deposits | 37,458 | - | 37,458 | (205,000) |
| Net cash provided by Investing Activities | 215,763 | 162,762 | 53,001 | 1,023,883 |
|  | | | | |
| **FINANCING ACTIVITIES** | | | | |
| LLCP Sr. Note PIK Interest | - | - | - | - |
| LLCP Note | - | - | - | (2,000,000) |
| Amortization of Debt Discount | 56,856 | 56,856 | - | 511,705 |
| Other Equity | - | - | - | - |
| Preferred Stock PIK Dividends | - | - | - | 17,963 |
| Net cash provided by Financing Activities | 56,856 | 56,856 | - | (1,470,333) |
|  | | | | |
| Net cash increase for period | 16,111 | 392,755 | (376,644) | (1,940,342) |
|  | | | | |
| Cash at beginning of period | 1,495,836 | 3,233,922 | (1,738,086) | 3,452,290 |
| Cash at end of period | 1,511,947 | 3,626,677 | (2,114,730) | 1,511,947 |

September 2008 Selected Operational Metrics
Consolidated: ACCS, Inc. / ACCS Corp / SCH Corp

|  | Sept 08 | Sept 07 | Sep 08 Budget | YTD 08 | YTD 07 |
|---|---|---|---|---|---|
| Checks Processed | 53,359 | 54,123 | 55,072 | 485,567 | 491,822 |
| IB Calls | 45,756 | 52,263 | | | |
| OB Calls | 4,508 | 7,836 | | | |
| Pieces Mailed | 180,953 | 154,317. | | 1,659,204 | 1,778,607 |
| | | | | | |
| Classes Rented | 211 | 236 | | | |
| Student Attendance | 3,035 | 5,090 | | | |
| Average Class Size | 20 | 22 | | | |
| Home Studies Sent | 1,491 | 1,642 | | | |
| Home Studies Returned | 599 | 479 | | | |

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

November 3, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA  92673
Attention:  Michael C. Schreck

Re:    Notice of Payment Default

Dear Mr. Schreck:

We make reference to the letters we sent you dated July 24, 2008 (the "July Letter"), August 12, 2008 (the "August Letter"), September 2, 2008 (the "September Letter") and October 22, 2008 (the "October Letter").  We hereby reaffirm all of our concerns, findings, statements of facts and conclusions described in each of the July Letter, the August Letter, the September Letter and the October Letter.

In addition, we hereby reaffirm that the Events of Default described in the August Letter, the September Letter and October Letter have occurred and are continuing and that, pursuant to Section 1 of each of the Notes, interest at the Default Interest Rate has been accruing since July 1, 2008, the date of occurrence of the first of such Events of Default. We are investigating other potential Events of Default that may have occurred as of the date hereof.

On October 31, 2008, you failed to make a required additional payment to us in the aggregate sum of $388,709.88 (the "Cumulative Owed Default Interest").  The Cumulative Owed Default Interest is comprised of (i) accrued and unpaid default interest of $52,689.37 for the period from July 1, 2008 to July 30, 2008, (ii) accrued and unpaid default interest of $79,034.06 for the period July 31, 2008 through and including August 29, 2008, (iii) accrued and unpaid default interest of $7,025.25 for the period August 30, 2008 through and including August 31, 2008, (iv) accrued and unpaid default interest of $107,135.06 for the period September 1, 2008 through and including September 30, 2008, and (v) accrued and unpaid default interest of $142,826.14 for the period October 1, 2008 through and including October 31, 2008  The failure to pay the Cumulative Owed Default Interest to us on October 31, 2008, constitutes an immediate payment default under Section 11.1(a) of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved,

including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable.  Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect.  Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:    Ken Cera
       Mitchell Cohen

- 2 -

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

December 2, 2008

ACCS Corp.
180 Avenida La Pata
San Clemente, CA  92673
Attention:  Michael C. Schreck

Re:    Notice of Payment Default

Dear Mr. Schreck:

We make reference to the letters we sent you dated July 24, 2008 (the "July Letter"), August 12, 2008 (the "August Letter"), September 2, 2008 (the "September Letter"), October 22, 2008 (the "October Letter") and November 3, 2008 (the "November Letter").  We hereby reaffirm all of our concerns, findings, statements of facts and conclusions described in each of the July Letter, the August Letter, the September Letter, the October Letter and the November Letter.

In addition, we hereby reaffirm that the Events of Default described in the August Letter, the September Letter, October Letter and November Letter have occurred and are continuing and that, pursuant to Section 1 of each of the Notes, interest at the Default Interest Rate has been accruing since July 1, 2008, the date of occurrence of the first of such Events of Default. We are investigating other potential Events of Default that may have occurred as of the date hereof.

On November 30, 2008, you failed to make a required additional payment to us in the aggregate sum of $ 375,532.37 (giving effect to the application of the $150,000 payment made on November 12, 2008) (the "Cumulative Owed Default Interest"). The Cumulative Owed Default Interest is comprised of (i) accrued and unpaid default interest of $95,883.74 for the period September 1, 2008 through and including September 30, 2008, (ii) accrued and unpaid default interest of $136,114.22 for the period October 1, 2008 through and including October 31, 2008, and (iii) accrued and unpaid default interest of $143,534.41 for the period November 1, 2008 through and including November, 2008   The failure to pay the Cumulative Owed Default Interest to us on November 30, 2008, constitutes an immediate payment default under Section 11.1(a) of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved,

including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:    Ken Cera
       Mitchell Cohen

Levine Leichtman Capital Partners III, L.P.
335 North Maple Drive, Suite 240
Beverly Hills, CA 90210

January 5, 2009

ACCS Corp.
180 Avenida La Pata
San Clemente, CA  92673
Attention:  Michael C. Schreck

Re:    <u>Notice of Payment Default</u>

Dear Mr. Schreck:

We make reference to the letters we sent you dated July 24, 2008 (the "<u>July Letter</u>"), August 12, 2008 (the "<u>August Letter</u>"), September 2, 2008 (the "<u>September Letter</u>"), October 22, 2008 (the "<u>October Letter</u>"), November 3, 2008 (the "<u>November Letter</u>") and December 2, 2008 (the "<u>December Letter</u>").  We hereby reaffirm all of our concerns, findings, statements of facts and conclusions described in each of the July Letter, the August Letter, the September Letter, the October Letter, the November Letter and the December Letter.

In addition, we hereby reaffirm that the Events of Default described in the August Letter, the September Letter, October Letter, November Letter and the December Letter have occurred and are continuing and that, pursuant to <u>Section 1</u> of each of the Notes, interest at the Default Interest Rate has been accruing since July 1, 2008, the date of occurrence of the first of such Events of Default. We are investigating other potential Events of Default that may have occurred as of the date hereof.

On December 31, 2008, you failed to make a required additional payment to us in the aggregate sum of $ 518,383.46(the "<u>Cumulative Owed Default Interest</u>").  The Cumulative Owed Default Interest is comprised of (i) accrued and unpaid default interest of $98,184.62 for the period September 1, 2008 through and including September 30, 2008, (ii) accrued and unpaid default interest of $136,114.22 for the period October 1, 2008 through and including October 31, 2008, (iii) accrued and unpaid default interest of $131,723.44 for the period November 1, 2008 through and including November 30, 2008, (iv) accrued and unpaid default interest of $136,114.22 for the period December 1, 2008 through and including December 31, 2008, and (v) interest on unpaid default interest of $16,246.96.The failure to pay the Cumulative Owed Default Interest to us on December 31, 2008, constitutes an immediate payment default under <u>Section 11.1(a)</u> of the Securities Purchase Agreement. Additionally, you have failed to reimburse us for legal costs and expenses incurred by us in the amount of $71,505.47 that were required to be paid upon demand in accordance with <u>Section 8.6</u> of the Securities Purchase Agreement.

This letter is being delivered without prejudice to any other rights, powers and remedies of the Purchaser under or in connection with the Securities Purchase Agreement, the Notes, the Collateral Documents, the other Investment Documents and Applicable Laws, all of which rights, powers and remedies are hereby expressly reserved, including the right to declare all outstanding principal of, premium, if any, accrued and unpaid interest on, and all other amounts under the Notes, and all other Obligations, to be immediately due and payable. Nothing herein shall constitute (or be deemed to constitute) an amendment or other modification of, or a supplement to, any term, condition or other provision of the Securities Purchase Agreement, the Notes, the Collateral Documents or any other Investment Document all of which shall remain in full force and effect. Furthermore, nothing in this letter shall constitute (or be deemed to constitute) a waiver or forbearance of any rights, powers or remedies against the Company Parties, any other Persons or the Collateral, or of any breach, violation, Default or Event of Default, whether past, present or future, and no course of dealing or failure or delay on the part of the Purchaser in exercising any rights, powers or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of, or any abandonment or discontinuance of steps to enforce any right, power or remedy, preclude any other or any further exercise thereof or the exercise of any other rights, powers or remedies.

Sincerely,

Steven Hartman
Vice President
Levine Leichtman Capital Partners, Inc.

cc:    Ken Cera
       Mitchell Cohen

- 2 -