# Exhibit D

**Weintraub, William**

| | |
|---|---|
| **From:** | Jason Schauer [jschauer@llcp.com] |
| **Sent:** | Tuesday, January 13, 2009 3:55 PM |
| **To:** | Michael Schreck; Weintraub, William; Charles Jenkins; Kenneth Cera |
| **Cc:** | Steve Hartman; Kimberly Pollack; Lauren Leichtman; Cohen, Mitchell; Jackson, Meredith; Steinberg, Howard; Daniel K. Astin; John F. Brumlik; Jason Schauer |
| **Subject:** | DRAFT ACCS debtor in possession financing term sheet |
| **Attachments:** | S25C-109011312460.pdf |

Michael, at your request, attached is a DRAFT term sheet for debtor in possession financing for the Company. This term sheet is preliminary for discussion purposes and LLCP's financing would be subject to diligence, the conditions set forth in the term sheet, and final documentation that is acceptable to LLCP and its counsel.

We recognize the urgency of the situation and are available to discuss these terms with you and your counsel so any issues can be immediately resolved. We are prepared to finalize this and any other issues within the next 48 hours.

THIS PRELIMINARY DEBTOR-IN-POSSESSION FINANCING TERM SHEET IS FOR DISCUSSION PURPOSES ONLY AND SHALL NOT BE DISCLOSED BEYOND THE INTENDED RECIPIENTS OF THIS TERM SHEET. THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) A BINDING AGREEMENT OF ANY KIND OR A COMMITMENT, OFFER OR SOLICITATION TO ENTER INTO ANY AGREEMENT OR TO CONSUMMATE ANY PARTICULAR TRANSACTION, NOR SHALL IT BE CONSIDERED AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES AS TO ANY PLAN OF REORGANIZATION, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, WILL ONLY BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES AND/OR BANKRUPTCY LAWS. THIS TERM SHEET DOES NOT ADDRESS ALL MATERIAL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL TRANSACTION. THIS TERM SHEET HAS BEEN PRODUCED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS SUBJECT TO THE PROVISIONS OF RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER SIMILAR APPLICABLE RULES AND STATUTES.

**American Corrective Counseling Services, Inc. $3.5 million**
**Superpriority First Lien DIP Term Loan Facility**

Summary of Principal Terms and Conditions

| | |
|---|---|
| Borrower: | American Corrective Counseling Services, Inc. as debtor and debtor-in-possession (the "***Borrower***") in a case (the "***Case***" and, together with the cases of Parent and their domestic subsidiaries, the "***Cases***") under chapter 11 of the United States Code (the "***Bankruptcy Code***") filed in the Bankruptcy Court for the District of Delaware on or before January 19, 2009. |
| Guarantors: | SCH Corp., ACCS Corp., and each of their (and Borrower's) direct and indirect subsidiaries as debtors and debtors-in-possession in the Cases (collectively, the "***Guarantors***"). |
| DIP Lender: | Levine Leichtman Capital Partners III, L.P. (or its designee) (the "***DIP Lender***"). |
| Facilities: | (i) New Money Facilities.  The New Money DIP Facilities shall consist of two loans each of which are available in single draws. The first loan provides for an interim borrowing, subject to entry of the Interim Order (as defined below), of up to $1 million. The second loan provides for an additional borrowing, subject to entry of a Final Order (as defined below), of $2.5 million, less the amount borrowed on an interim basis. |
| | (ii) Roll-Up Facility.  Moreover, subject to entry of a Final Order, the following amounts (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement) would be converted, into post-petition debt under the DIP Credit Agreement:  All (i) prepetition principal on the Secured Senior Notes issued under the Securities Purchase Agreement dated November 10, 2004 (the "***Securities Purchase Agreement***") (which is $31,613,624.62 as of December 31, 2008); (ii) accrued and unpaid Default Interest from 9/1/08 through and including 12/31/08 (which is $502,136.50); (iii) interest |

1

on unpaid interest (which is $16,246.96 as of December 31, 2008); (iv) all additional unpaid interest incurred through and including the date the Interim Order is entered (all sums collectively, the "*__Roll-Up Amount__*").

Purpose:

The Facilities shall be available to provide liquidity for working capital and other general corporate purposes of the Borrower and the Guarantors, including payment of expenses associated with the Cases provided that the usage of the Facilities for liquidity purposes shall be limited by, and only available in accordance with, a monthly budget approved by the Bankruptcy Court and acceptable to the DIP Lender.

Availability:

Subject to the terms and conditions of the Interim Order and the Final Order, New Money Loans will be available from the DIP Closing Date through, at the latest, __April 21, 2009__ and the Borrower may repay the New Money Loans, but does not have the right to reborrow such funds after repayment. The aggregate principal amount of all New Money Loans will not exceed at any time $3.5 million.

Until the Final Order has been entered, availability will be limited to an amount equal to the maximum amount of New Money Loans approved by the Bankruptcy Court pursuant to the Interim Order, not to exceed $1 million.

*__Minimum Liquidity__*. Loans will not be available at any time unless the aggregate balance of cash and cash equivalents of the Borrower and the Guarantors and any other account of the Borrower and the Guarantors) at such time is less than $1 million, after giving effect to amounts to be drawn under the Facilities at such time.

Loans and Roll-Up:

(i) Interim Date Loan - up to $1 million and available for five days after the Interim Closing Date;

(ii) Delayed Draw Loan - up to an additional $2.5 million, less the amount of the Interim Date Loan, and available from the date the Final Order is entered through April 21, 2009; and (iii) the conversion of an amount equal to the Roll-Up Amount of Debtors' obligations under the Securities Purchase Agreement into post petition debt (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement).

Interest Rate:

15.0%; payable on the 15th and last day of each month (or the immediately preceding business day if such

2

interest payment date occurs on a day that is not a business day).

Unused Commitment Fees:    0.50% on the daily unused amount of the New Money commitments, payable on each interest payment date.

Default Rate:    The applicable interest rate plus 3.0% per annum.

DIP Closing Date:    The Closing Date will occur promptly, but no later than 2 days after the entry of the Interim Order (defined below) as to the Interim Draw (the "*__Interim DIP Closing Date__*"), and no later than 2 days after entry of the Final Order (defined below) as to all other draws and financings.

Closing Fee:    $150,000 fully earned and non-refundable fee due on the Interim DIP Closing Date

DIP Lender Legal Fees/Costs:    $200,000 retainer, plus payment of all prepetition and postpetition legal fees and costs incurred by DIP Lender, including under the Securities Purchase Agreement

Priority and Liens:    (i) pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute an allowed claim (the "*__Superpriority Claim__*") against the Borrower and each Guarantor, with priority over any and all administrative expenses, diminution claims   and all other claims against the Debtors, arising prior to or after the Petition Date, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, and which Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof (including proceeds of all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 550 or 553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "*__Avoidance Actions__*")), subject only to the payment of the Carve-Out to the extent specifically provided for in the Interim Order and DIP Credit Agreement;

3

(ii)(x) *First Lien on Cash Balances and Unencumbered Property:* pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors (including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries), whether existing on the Petition Date or thereafter acquired and that as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "***Unencumbered Property***");

(y) *Liens Priming Pre-Petition Liens:* pursuant to section 364(d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors, including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries, whether now existing or hereafter acquired, that is subject to the existing liens presently securing any claims against any of the Debtors. The security interests and liens granted to the DIP Lender shall be senior in all respects to the interests in such property of any prepetition lienholder (the "***Primed Liens***");

(z) *Liens Senior to All Other Liens:* the DIP Liens shall be automatically perfected without the need for any further filings, and shall not be subject to, made *pari passu* with, or subordinated to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any other lien or security interest pursuant to sections 364(c) or (d) of the Bankruptcy Code or (iii) any other liens arising before or after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

**Carve-Out:**

(i) the accrued and unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930;

(ii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court, and so long as in accordance with the budget,

until the earlier of (x) the occurrence of an Event of Default (as defined in the DIP Documents), provided that professional fees and expenses incurred after an Event of Default which is waived or cured shall also be included in the Carve-Out (so long as an unwaived or uncured Event of Default has not occurred and is not continuing) and (y) the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, provided that such fees and expenses incurred pursuant to either (ii)(x) or (ii)(y) must be approved by the Court; and

(iii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court upon and after the occurrence of an Event of Default and during the continuance of such an Event of Default which is not waived or cured, or upon and after the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, in an aggregate amount not to exceed $250,000, plus any allowed fees and expenses reasonably incurred by professionals retained pursuant to an order of the Court solely in connection with responding to requests a chapter 7 trustee appointed by order of the Court for the Cases makes of such professionals for transmittal of documents in their possession. In no event shall any of the Carve Out be used to pay any fees or expenses of any person retained in a chapter 7 case under sections 326, 327 or 328 of the Bankruptcy Code.

Notwithstanding the foregoing or anything herein to the contrary, no portion of the Carve-Out, or any Cash Collateral of the Debtors, may be used to investigate, commence, or prosecute any claims against the DIP Lenders in any capacity, or any officer, director, employee, or affiliate thereof, or any Indemnified Persons under the Securities Purchase Agreement or the DIP Financing Agreement; provided that up to $25,000 may be used to investigate the extent, priority, and validity of the liens and security interests granted in connection with the Securities Purchase Agreement.

DIP Budget:

The Debtors shall be required to prepare a 13 week interim budget and cash flow forecast, prior to funding, and a monthly budget through and including April 21, 2009, which shall be subject to approval by the DIP Lender. The Debtors are required to submit the final budget to the DIP Lender by no later than January 14, 2009. Under the DIP Facility the Debtors may make disbursements solely for the purposes set forth in, and in strict accordance with, the budget.

| | | |
|---|---|---|
| Milestone Covenants: | Final DIP Budget: | January 14, 2009 |
| | Petition Date: | January 19, 2009 |
| | Interim DIP Order Entered: | January 21, 2009 |
| | Final DIP Order Entered: | February 10, 2009 |
| | Business Plan and Restructuring Term Sheet: | February 16, 2009 |
| | Lien Objection Deadline: | February 20, 2009 |
| | File Plan and Disclosure statement: | March 1, 2009 |
| | Approve Disclosure Statement: | March 26, 2009 |
| | Mail Solicitation Packages: | March 27, 2009 |
| | Confirm Plan: | April 20 , 2009 |
| | Plan Effective Date: | April 21, 2009 |

Termination:

The Facilities shall be repaid in full, and the Commitment shall terminate, at the earliest of (i) April 21, 2009 (the *"__Maturity Date__")*, (ii) the substantial consummation (as defined in Section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the effective date) of a plan of reorganization  that is confirmed pursuant to a confirmation order entered by the Bankruptcy Court (iii) termination or expiration of the Borrower's exclusive right to propose and solicit acceptances to a chapter 11 plan pursuant to section1121 of the Bankruptcy Code, (iv) the acceleration of the loans and the termination of the Commitment in accordance with the final loan documentation; (v) conversion of any Case to one under Chapter 7 of the Bankruptcy Code; or (vi) the sale of all or substantially all of any of the Borrower's or Guarantors' assets pursuant to Section 363 of the Bankruptcy Code.

Mandatory Pre-Payments:

Typical and customary for transactions of this type.

Representations and Warranties:

Usual for facilities and transactions of this type and others to be reasonably specified by LLCP,

6

including, with but limitation those of the type set forth
in the Securities Purchase Agreement (as applicable)

**Conditions Precedent to Initial Borrowing:**

Usual for facilities and transactions of this type and
others to be reasonably specified by LLCP,
including, without limitation, those of the type set forth
in the Securities Purchase Agreement (as applicable) and
satisfaction of the following:

(a) not later than January 21, 2009, entry of an
order of the Court in substantially the form set forth as
an Exhibit to the Agreement (the *"Interim Order")* on an
application or motion by the Borrower that is reasonably
satisfactory in form and substance to LLCP, which
Interim Order shall have been entered on such prior
notice to such parties (including, without limitation, the
holders of the Primed Liens) as may be reasonably
satisfactory to LLCP, approving the transactions
contemplated herein and granting superpriority claim
status and senior priming and other liens referred to
above, which Interim Order shall (i) authorize extensions
of credit in amounts that are not in excess of an amount
that is satisfactory to LLCP, (ii) authorize the use of cash
collateral and provide for adequate protection in favor of
the holders of the Primed Liens (if any) only as set forth
herein (iii) approve the payment by the Borrower of all
of the fees provided for herein and (iv) remain in full
force and effect, not have been reversed, modified,
amended or stayed;

(b) all the "first day motions" submitted in
connection with the case, and "first day orders" entered
in connection therewith shall be reasonably satisfactory
in form and substance to LLCP;

(c) the Bankruptcy Court shall have entered an
order (in form and substance satisfactory to LLCP)
providing that the holders of the Primed Liens (if any)
will receive, as their sole adequate protection,
replacement liens on post-petition assets junior to the
liens securing the Facilities;

(d) sufficient and timely notice of the DIP
motion and of the proposed Interim Order shall have
been given to all parties entitled to receive such notice.

**Conditions Precedent to all Borrowings:**

Compliance with all Milestone Covenants and timely
delivery of and compliance with the budget; Delivery of
notice of accuracy of representations and

7

Warranties; the absence of defaults; sufficient and timely notice of the DIP motion and of the proposed Final Order shall be given to all parties entitled to receive such notice. The Interim Order or a final order in substantially the form of the Interim Order with only such modifications as are satisfactory to LLCP (the *"**Final Order**"*) shall be and at all times remain in full force and effect, and shall not have been reversed, modified, vacated amended or stayed without the prior written consent of the parties hereto.

Affirmative Covenants:

Affirmative covenants that are usual for facilities and transactions of this type to be specified by LLCP (to be applicable to the Borrower and its subsidiaries), including, without limitation those of the type set forth in the Securities Purchase Agreement (as applicable); and:

(a) timely satisfaction of the Milestone Covenants (defined above), including the Restructuring Term Sheet, which shall be reasonably detailed and acceptable to the DIP Lender in its sole and absolute discretion; and access to senior management to discuss Borrower performance, as well as the Restructuring Term Sheet with LLCP upon LLCP's reasonable request;

(b) delivering to LLCP and its counsel all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of the Borrower or any Guarantor with the Court or distributed by the Borrower or any Guarantor to any official committee appointed in any of the Cases;

(c) paying all post-petition taxes and other post petition obligations as and when due except where contested in good faith and by appropriate proceedings (if the Borrower and the Guarantors shall have set aside on their books adequate reserves therefor).

Negative Covenants:

Negative covenants that are usual for facilities and transactions of this type to be specified by LLCP (to be applicable to the Borrower and the Guarantors), including, without limitation, those of the type set forth in the Securities Purchase Agreement (as applicable).

Financial Covenants:

Similar to those set forth in the Securities Purchase Agreement, and other financial covenants that are usual for facilities and transactions of this type (with financial

8

definitions, levels and measurement periods to be agreed upon), including, without limitation;(a) minimum EBITDA; (b) minimum liquidity; (c) maximum capital expenditures; (d) maximum restructuring charges; and (e) fixed charge coverage ratio

Events of Default:

Similar to those set forth in the Securities Purchase Agreement, and other events of default that are usual for facilities and transactions of this type to be reasonably specified by LLCP relating to the Borrower and the Guarantors (subject, where appropriate, to thresholds and grace periods to be agreed upon), including, without limitation,

(a) any of the Cases shall be dismissed or converted to a Chapter 7 Case, a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Borrower (powers beyond these set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases and the order appointing such Trustee, responsible officer, or examiner shall not be reversed or vacated within 30 days after the entry thereof; or any other superpriority Claim (other than the Carve-Out) which is pari passu with or senior to the claims of LLCP and the DIP Lender shall be granted in any of the Cases; or the Bankruptcy Court shall enter an order terminating the use of cash collateral referred to in paragraph (a) of "Conditions Precedent "to Initial Borrowing" above;

(b) other than payments authorized by the Bankruptcy Court, the Borrower or any Guarantor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables (including, without limitation, reclamation claims);

(c) the Court shall enter an order granting relief from the automatic stay, the adverse resolution of which could result in a material adverse effect; or

(d) an order shall be entered reversing, amending, supplementing, staying for a period in excess of 5 days, vacating or otherwise modifying the Interim Order or the Final Order.

Expenses and Indemnification:

The Borrower will indemnify the DIP Lender, and its respective affiliates, successors and assigns and the officers, directors, employees, managers, partners

9

(limited and general), agents, advisors, controlling persons and members of each of the foregoing (each, an **"_Indemnified Person_"**) and hold them harmless from and against all reasonable costs, expenses (including fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless  of whether such matter is initiated by a third party or by the Borrower or any of it's affiliates) that relates to the financing contemplated hereby, the Cases or any transactions in connection therewith, _provided_ that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of counsel) of LLCP incurred prepetition (such prepetition fees and costs estimated to be approximately $100,000) or postpetition, including with respect to enforcement costs and documentary taxes associated with the Facilities, will be paid by the Borrower upon demand.

Governing Law and Forum:        New York.

Counsel to LLCP:        Irell & Manella, LLP