# Exhibit F

## CASH COLLATERAL AGREEMENT AND STIPULATION

Below are the essential terms for a cash collateral agreement and stipulation between American Corrective Counseling Services and its Debtor affiliates, on the one hand (the "Debtors"), and Levine Leichtman Capital Partners III, L.P. ("LLCP"), on the other hand. Where the context requires, the Debtors and LLCP will be referred to as the "Parties." This Agreement is enforceable and effective immediately upon the execution hereof by the Parties, subject only to Bankruptcy Court approval. The Parties agree to execute definitive documents, and other documents necessary and appropriate to effectuate the terms hereof, within seven (7) days after the date hereof to further memorialize this Agreement; however, failure to do so shall not render this Agreement unenforceable in any such event.

| | |
|---|---|
| **Dual Track:** | **Track 1**: Upon execution of this Agreement, the Parties will immediately commence negotiations in order to attempt to reach agreement on the essential terms of a joint plan of reorganization for the Debtors that will include provisions for management compensation, an equity incentive plan for management, the resolution of the consumer class action litigation pending against the Debtors, a distribution for unsecured creditors, and other customary terms for a plan of reorganization including appropriate releases and exculpations for the Debtors and LLCP, and each of their respective officers, directors, managers, and affiliates. |
| | If by no later than February 13, 2009, a plan term sheet is successfully negotiated, the Parties will proceed as expeditiously as possible to document such plan and seek confirmation of such plan by the Bankruptcy Court in accordance with the timeline set forth in the Milestone Covenants contained herein. |
| | **Track 2**: Upon execution of this Agreement, the Parties will also immediately commence a sale process to seek to sell the assets of the Debtors pursuant to an auction conducted under Bankruptcy Code sections 363(b) and (f) in accordance with the timeline set forth in the Milestone Covenants contained herein. |
| | Notwithstanding the foregoing, even if the Parties reach agreement on a joint plan as outlined above, the Parties will also move ahead with the sale process to determine whether a purchaser other than LLCP will |

2004230.2 01

|  |  |
|---|---|
|  | purchase the Debtors' assets for a cash payment in an amount equal to at least the full amount of the Debt[1] owed to LLCP. If such purchaser is located, and LLCP decides to outbid the third party purchaser, the consideration to be provided to the Debtors' estates for creditors other than LLCP, and the post-sale arrangements with management shall be no less favorable than the terms of the joint plan. |
|  | By no later than February 3, 2009 the Debtors will file a motion on shortened time to be heard February 9, 2009 to engage an investment banker reasonably acceptable to LLCP and whose compensation arrangements will be reasonably acceptable to LLCP. Any such arrangements will provide for reduced compensation if the successful bidder is LLCP. William Blair & Company is reasonably acceptable to LLCP provided the proposed compensation arrangements are reasonably acceptable to LLCP. |
| **Presentation of Stipulation:** | The Parties will present this Agreement to the Bankruptcy Court for approval. The Agreement and order approving same must be approved and entered by February 3, 2009. The Parties will agree on the form of orders approving this Agreement and the DIP Loan Terms Agreement in a manner consistent with the terms hereof and Exhibit A. |
| **Bid Procedures:** | LLCP shall be the stalking horse bidder for the 363 sale and its opening bid shall be $20,000,000. LLCP reserves the right to bid up to the full amount of its Debt. |
|  | The Debtors agree that the Debt owed to LLCP as of the Petition Date is no less than $31,613,624.62, plus accrued interest and default interest through that date. The Debtors and LLCP will agree by January 30, 2009, upon the amount of LLCP's Debt owed as of the Petition Date (excluding additional default interest and other damages permitted under applicable law on account of the Debtors' alleged |

---

[1] For purposes of this Agreement, "Debt" includes, but is not limited to, all prepetition and postpetition principal, interest, default interest, fees, costs, and other amounts to which LLCP is entitled to under the Securities Purchase Agreement (including amounts in respect of indemnification of Indemnified Persons, as defined in the Securities Purchase Agreement), DIP facility, or otherwise (including fees and costs described herein in connection with the sale process to which LLCP is entitled as the Stalking Horse Bidder).

unexcused failure to obtain account control agreements as required under the Securities Purchase Agreement and other Investment Documents, and related breaches of such documents for breach of representations, warranties, covenants, and certifications made to LLCP (the "Blocked Account Dispute")). Any unresolved dispute as to the calculation of the amount of the Debt owed to LLCP as of the Petition Date (other than the Blocked Account Dispute) shall be referred to a third party for a binding determination of the amount in dispute (it being understood that any and all claims arising from or related to the Blocked Account Dispute will be subsequently determined in accordance with the terms hereof and the timing set forth in the next sentence).

Any payment to LLCP under the DIP Facility of default interest that is later determined not to be owed by the Debtors will be reversed and the Debtors will be given appropriate credit.

A decision concerning the amount of the Debt (other than the Blocked Account Dispute) must be rendered on or before February 20, 2009, and a decision concerning the Debt, if any, relating to the Blocked Account Dispute must be rendered on or before the date necessary to ensure LLCP may credit bid the full amount of its claim, as finally determined. Debtors agree to the validity, scope, extent, and perfection and first priority of LLCP's liens, and the non-existence of any claims by the Debtors against LLCP, or defenses to any payment of any of the amounts owing by the Debtors to LLCP, subject to any rights preserved for any Official Creditors' Committee appointed in the Cases.

The principal bid protection to LLCP will be a "topping fee" to be paid to LLCP from the proceeds of the winning overbid provided that such transaction actually closes.

The topping fee shall be $500,000.

At the auction, bid increments shall be $250,000.

The initial overbid that must be made by a qualified

competing bidder, must be the amount of LLCP's opening bid, plus the amount of the topping fee, plus the investment banking fee that would be due on sale to such other successful bidder (i.e., other than LLCP) plus the bid increment of $250,000.

To qualify as a bidder, a proposed bidder must bid substantially the same contract as LLCP (unless the economic terms are materially more beneficial for the Debtors' estates), must waive all due diligence outs and financing outs by the bid deadline, demonstrate to the reasonable satisfaction of the Debtors, LLCP, and any creditors' committee, the financial wherewithal to pay all cash at closing, and be ready to close no later than eleven (11) days following approval of its purchase by the Bankruptcy Court. In addition, to qualify, each bidder must make a refundable deposit of $2,500,000 (in cash or clean letter of credit). The deposit shall become non-refundable upon its selection as the winning bidder. Deposits for all bidders other than the winning bidder and the second highest bidder shall be returned immediately following conclusion of the auction. No deposit is required from LLCP.

The second highest bidder shall remain bound and obligated to close the purchase until the sale to the highest bidder actually closes. If the winning highest bidder does not close by the closing deadline, the second highest bidder shall be required to purchase the assets and shall be treated as the winning bidder.

**Timing for Sale:** Bid procedures subject to LLCP's reasonable approval must be approved by the Bankruptcy Court on or before February 13, 2009. The marketing period shall no more than 45 days from the date of the bid procedures are approved by the Bankruptcy Court, and the sale shall be held no later than March 31, 2009.

**Payment of Investment Banker:** Payment of the investment banker's fees will be made from the Debtors' cash per the Budget or the sale proceeds in excess of LLCP's Debt.

**Cash Collateral:** Subject to approval of a Second Interim Cash Collateral Order on or before February 3, 2009, and approval of a Final Cash Collateral Oder on or before

|  |  |
|---|---|
|  | February 17, 2009, both of which shall have customary protection and covenants and incorporate relevant terms of the stipulation and related documents, LLCP shall agree to the Debtors' use of cash and alleged cash collateral during the entire marketing period pursuant to rolling a 13 week Budget (updated weekly on each Monday, by 1:00 p.m. P.S.T.) that will be prepared by the Debtors and approved by LLCP as more particularly set forth in the DIP Loan Terms Agreement. The DIP Loan Terms Agreement is attached hereto as Exhibit A and is an integral part of, and non-severable from, this Agreement, and is incorporated herein as though set forth in full. |
|  | Permitted variances shall be on a 10% cumulative basis for both revenues and disbursements and not on individual line items. Duration of use through the date of the closing of the sale (but in no event later than April 11, 2009) (if a sale occurs on that date) or May 19, 2009 if plan process is utilized or sale date is extended as contemplated herein. |
|  | On or before January 28, ,2009, the Debtors will also provide LLCP a Professional Fee Budget to set forth estimated professional fees that will be incurred during the period of the Budget. The Post-Default/Post-Termination Carve-Out for professional fees will include fees incurred pursuant to the Professional Budget during the period before Default or Termination but not yet billed or not yet paid. The Budget must be reasonably acceptable to and be approved by LLCP by February 3, 2009. |
|  | LLCP agrees to act in good faith to consider an increase in the Professional Fee Budget for the Debtors' professionals in the event that the fees incurred by the Debtors' professionals in connection with the implementation of the Dual Track agreed to by LLCP and the Debtors in this Agreement are greater than budgeted. The Debtors agree to act in good faith to further reduce operating costs set forth in the Budget. |
| **DIP Financing:** | Subject to entry of an interim DIP order which must be approved contemporaneously with the Second Interim Cash Collateral Order, on terms described on |

|  |  |
|---|---|
|  | Exhibit A hereto, and approval of a Final DIP Order, which must be approved contemporaneously with the Final Cash Collateral Order, per the DIP Loan Terms Agreement, the DIP Loan will include a rollup of all prepetition Debt. The Debtors will waive any right to surcharge LLCP pursuant to Bankruptcy Code section 506(c) for any expenses incurred during the pendancy of the Budget that are not set forth in the Budget. |
| **Adequate Protection:** | Any diminution in value to be secured by a lien on all prepetition and postpetition assets. §507(b) protection, which shall include proceeds of avoidance action recoveries. |
| **Certain Waivers:** | Regardless of whether a purchaser is located or a 363 sale actually closes, provided the sale process is uninterrupted and is conducted to its conclusion, the Debtors agree that (1) the Debtors will not file a plan of reorganization during the marketing period other than the joint plan if one is reached, (2) the Debtors will not propose or support a plan that does not require on the effective date of such plan the payment in cash and in full of LLCP's prepetition and postpetition Debt, or otherwise attempt to effectuate a cram down of any of LLCP's Debt, and (3) Debtors will oppose efforts by any third party to terminate exclusivity. |
|  | Absent a finding that LLCP acted in bad faith in connection with the performance of the terms of this Agreement, and in the event of Default under the DIP Credit Agreement, the Cash Collateral Stipulation, or the terms hereof and the DIP Loan Terms Agreement, LLCP may move for termination of exclusivity for purposes of filing a plan on five (5) days notice, to the Debtors and any other parties as required by applicable law, subject to the Court's availability. |
| **Class Actions:** | Upon the advice of counsel, the Debtors will support and authorize the removal of the federal class actions pursuant to a notice of removal drafted by legal counsel to be identified. Removal to be filed on or before February 8, 2009 in consultation with LLCP. Motion to change venue to be timely filed. |

| | |
|---|---|
| **Access to Books and Records:** | During normal business hours on reasonable notice. |
| **Organizational Change Discussion:** | To occur from the date hereof through and including February 13, 2009. |
| **EPA Management Contract:** | Shall continue in effect during the period covered by the Budget without assumption. Other members of management shall continue to receive their regular compensation. |
| **Management Incentive Plan:** | The Parties will negotiate a management incentive plan to cover the period the Debtors remain in chapter 11 to be presented to the Bankruptcy Court as expeditiously as possible following the execution of this Agreement. |
| **Retention Plan:** | The Parties will negotiate a retention plan for non-insiders to cover the period the Debtors remain in chapter 11 to be presented to the Bankruptcy Court as expeditiously as possible following the execution of this Agreement. |
| **Wind-Up Budget Following Sale:** | To be agreed upon by February 10, 2009. |
| **Retention of Consumer Credit/ Class Action Counsel:** | LLCP to support engagement of prepetition counsel for the Debtors to advise the Debtors as needed on consumer credit, debt collection, and class action matters provided no payments for prepetition amounts owed will be made outside of a plan, and shall not be the subject of a critical vendor motion. |
| **Fail Sale:** | In the event the terms of a joint plan are agreed upon by February 13, 2009 and such plan is not confirmed on or before May 7, 2009, the 363 sale will be held on such date. |
| **Milestone Covenants:** | |
| Cash Collateral Stipulation to be presented for Court Approval: | January 28, 2009 |
| Agreement as to amount of LLCP Debt: | January 30, 2009 |
| Order approving Stipulation: | February 3, 2009 |
| Order approving Second Interim Cash Collateral Order: | February 3, 2009 |

| | |
|---|---|
| Order approving Interim DIP: | February 3, 2009 |
| Engage Investment Banker: | February 3, 2009 |
| Submission to LLCP of Professional Fee Budget: | February 5, 2009 |
| Filing of Notices of Removal: | February 8, 2009 |
| Approval by LLCP of Professional Fee Budget: | February 9, 2009 |
| Order approving engagement of banker and commencement of sale process: | February 9, 2009 |
| Agreement re Wind-Up Budget: | February 10, 2009 |
| Last day to agree upon plan terms: | February 13, 2009 |
| Order approving bid procedures: | February 13, 2009 |
| Final cash collateral order: | February 17, 2009 |
| Final DIP Order: | February 17, 2009 |
| Lien Objection Deadline for Committee: | February 20, 2009 |
| Decision to be rendered on disputed amount of Debt: | February 20, 2009 |
| File Plan and Disclosure Statement: | March 9, 2009 |
| Deadline for bidders to provide deposit | March 15, 2009 |
| Deadline for bidders to waive all diligence and financing outs and other contingencies: | March 20, 2009 |
| Auction and hearing to approve § 363 Sale, and date of entry of order approving sale (if no plan in process): | March 31, 2009 |
| Court Approval of Disclosure Statement: | April 10, 2009 |
| Mail Solicitation Packages: | April 7, 2009 |
| Deadline to close 363 sale: | April 11, 2009 (the Debtors shall close the sale at any sooner date on or after March 31, 2009, if requested |

|  |  |
|---|---|
|  | in writing by LLCP or such other successful bidder) |
| Confirm Plan (or, if no plan confirmed, 363 sale to LLCP as stalking bidder, unless outbid as described herein): | May 11, 2009 |
| Plan Effective Date: | May 12, 2009 |
| Extended Deadline to Close 363 Sale: | May 19, 2009 (the Debtors shall close the sale at any sooner date on or after May 7, 2009, if requested in writing by LLCP or such other successful bidder) |

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____
Its: _____CEO_____

SCH Corp.

By: _____
Its: _____CEO_____

ACCS Corp.

By: _____
Its: _____CEO_____

Levine Leichtman Capital Partners III, L.P.

By: _____
Its: _____

2004230.2 01                                                10

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____
Its: _____

SCH Corp.

By: _____
Its: _____

ACCS Corp.

By: _____
Its: _____

Levine Leichtman Capital Partners III, L.P.

By: _____
Its: _Vice President_____

# Exhibit A

(DIP Loan Terms Agreement)