# Exhibit G

**American Corrective Counseling Services, Inc. $4.0 million**
**Superpriority First Lien DIP Term Loan Facility**

Below are the essential terms for a DIP Facility Agreement (the "DIP Loan Terms Agreement")
between American Corrective Counseling Services, Inc. and its Debtor affiliates, on the one hand
(the "Debtors"), and Levine Leichtman Capital Partners III, L.P. ("LLCP"), on the other hand.
Where the context requires, the Debtors and LLCP will be referred to as the "Parties." This
Agreement is enforceable and effective immediately upon the execution hereof by the Parties,
subject only to Bankruptcy Court approval. The Parties agree to execute definitive documents,
and other documents necessary and appropriate to effectuate the terms hereof, within seven (7)
days after the date hereof to further memorialize this Agreement; however, failure to do so shall
not render this Agreement unenforceable in any such event. Concurrently herewith, the Parties
have executed a Cash Collateral Stipulation and Agreement into which this DIP Loan Terms
Agreement is incorporated.

| | |
|---|---|
| Borrower: | American Corrective Counseling Services, Inc. as debtor and debtor-in-possession (the "Borrower") in a case (the "Case" and, together with the cases of Parent and their domestic subsidiaries, the "Cases") under chapter 11 of the United States Code (the "Bankruptcy Code") filed in the Bankruptcy Court for the District of Delaware. |
| Guarantors: | SCH Corp., ACCS Corp., and each of their (and Borrower's) direct and indirect subsidiaries as debtors and debtors-in-possession in the Cases (collectively, the "Guarantors"). |
| DIP Lender: | Levine Leichtman Capital Partners III, L.P. (or its designee) (the "DIP Lender"). |
| DIP Facilities: | (i) New Money Facilities. The New Money DIP Facilities shall consist of a loan available in multiple draws (the "Lender Payment Shortfall Facility"). The loan provides for an interim borrowing, subject to entry of the Interim Order (as defined below), of up to $1.8 million. The loan provides for additional borrowing, subject to entry of a Final Order (as defined below), of $4.0 million, less the amount borrowed on an interim basis. |
| | (ii) Roll-Up Facility. Moreover, subject to entry of a Final Order, the following amounts (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement), less the amount paid to LLCP on account of amounts owing under items (ii), (iii) and (iv) below which amounts shall be paid to LLCP no later than one business day after entry of the Interim Order approving such payments, and as required herein as a consequence of the interim borrowing, would be converted, into postpetition debt under the DIP Credit Agreement: All (i) prepetition principal |

on the Secured Senior Notes issued under the Securities Purchase Agreement dated November 10, 2004 (the "Securities Purchase Agreement") (which is $31,613,624.62 as of December 31, 2008); (ii) accrued and unpaid interest at the default rate from 9/1/08 through and including the Petition Date (which is $849,734.45); (iii) interest on unpaid interest through and including the Petition Date (which is $ 21,946.68); (iv) all additional unpaid interest at the default rate and all outstanding fees and expenses incurred through and including the date the Interim Order is entered (all such sums to be rolled up in the aggregate, the "Roll-Up Agreement"). The foregoing is subject to the reservation of rights relating to the Blocked Account Dispute described in the Cash Collateral Stipulation and Agreement.

Debtors' Reservation of Rights. **Notwithstanding anything herein to the contrary,** in order to preserve the relative positions and rights of the parties prior to the Roll-Up Agreement and the grant of security and superpriority pursuant to Bankruptcy Code section 364 in connection with such Roll-Up Agreement, with respect to the issue of whether revenues generated by the Debtors postpetition are cash collateral subject to LLCP's prepetition security interest in its prepetition collateral and the proceeds thereof, or whether such revenues are not subject to LLCP's prepetition security interest by operation of Bankruptcy Code section 552, notwithstanding anything to the contrary herein, if an Event of Default occurs under (1) the DIP Facilities or the terms hereof and the DIP Lender terminates the DIP Facilities or (2) the Cash Collateral Stipulation and Agreement resulting in the Bankruptcy Court terminating further cash collateral usage in accordance with the Budget, solely for purposes of determining whether the Debtors or their estates can seek to use revenues generated by the Debtors postpetition (and no other purpose), the Roll-Up Agreement shall not be deemed to have effected the conversion of prepetition debt to postpetition debt, and the Debtors and their estates, on the one hand, and LLCP as prepetition lender, on the other hand, will have the same rights and arguments under Bankruptcy Code section 552 as if the Roll-Up Agreement had not been made and the foregoing grant of security and superpriority had not occurred. For clarity, (i) the foregoing preservation of relative positions and rights of the parties relates only to revenues generated by the Debtors postpetition and not to any payments or distributions made to LLCP from revenues generated by the Debtors prepetition, regardless of when realized or collected, (ii) no payments made by the Debtors to LLCP may be disgorged for

any reason, and (iii) new money loans by LLCP under the DIP Facilities shall be secured by a first priority lien in all revenues and collections (including revenues and collections generated by the debtors postpetition).

**Purpose:**

The Lender Payment Shortfall Facility shall be available to (a) make payments to the DIP Lender as described in the heading entitled "DIP Facilities: (ii) Roll-up Facility" above which are not rolled up pursuant to the Roll-Up Agreement; and (b) fund monthly payments of interest, reasonable fees and expenses of the Lender (the "Lender Payments") in the event the Debtors have insufficient cash and cash receipts to pay the expenses set forth in the Budget when due and the Lender Payments.

For clarity, cash and cash receipts (other than proceeds of the DIP Facility) shall be used first to pay expenses, to maintain the Minimum Liquidity Requirement, and then shall be used to make the Lender Payments.

**Availability:**

Subject to the terms and conditions of the Interim Order and the Final Order, DIP Facilities will be available from the DIP Closing Date through April 11, 2009 subject to automatic extension (without fee or cost to the Debtors or their estates) to (i) May 8, 2009 if a plan is confirmed, or (ii) in accordance with the Milestone Covenants (e.g., May 19, 2009 for outside date sale process under section 363 of the Bankruptcy Code) described in the Cash Collateral Stipulation and Agreement, all of which shall be included as affirmative covenants in the DIP Facilities (each such date, as appropriate, the "Availability Date").

Until the Final Order has been entered, availability will be limited to an amount equal to the maximum amount of DIP Facilities approved by the Bankruptcy Court pursuant to the Interim Order, not to exceed $1.8 million.

Minimum Liquidity. Loans may not be available at any time (at DIP Lender's election) if the aggregate balance of unrestricted cash and cash equivalents of the Borrower and the Guarantors and any other account of the Borrower and the Guarantors) at such time is less than $300,000.

**Loans and Roll-Up:**

(i) Interim Date Loan - up to $1.8 million;

(ii) Delayed Draw Loans -up to $4,000,000 less the amount of the Interim Date Loan, and available from the date the Final Order is entered through the Availability Date; and

(iii) the conversion of an amount equal to the prepetition amount to be rolled up pursuant to the Roll-Up Agreement pursuant to the section entitled "DIP Facilities: (ii) Roll-up Facility" of Debtors' obligations under the Securities Purchase Agreement into postpetition debt (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement).

Interest Rate:

15.0%; payable on the 15th and last day of each month (or the immediately preceding business day if such interest payment date occurs on a day that is not a business day).

Default Rate:

The applicable interest rate plus 2.0% per annum.

DIP Closing Date:

The Closing Date will occur promptly, but no later than one (1) day after the entry of the Interim Order (defined below) as to the Interim Draw (the "Interim DIP Closing Date"), and no later than one (1) day after entry of the Final Order (defined below) as to all other draws and financings.

Closing Fee:

$175,000 fully earned and non-refundable fee due on the Interim DIP Closing Date.

DIP Lender Legal Fees/Costs:

$200,000 retainer to be paid to Irell & Manella, plus payment of all prepetition and reasonable postpetition legal fees and costs incurred by DIP Lender, including under the Securities Purchase Agreement

Priority and Liens:

(i) pursuant to section 364(c)(1) of the Bankruptcy Code, all of the loans made under the DIP Facilities shall constitute an allowed claim (the "Superpriority Claim") against the Borrower and each Guarantor, with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, arising prior to or after the Petition Date, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, and which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including proceeds of all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law

(collectively, the "<u>Avoidance Actions</u>"), subject only to the payment of the Carve-Out to the extent specifically provided for in the Interim Order and DIP Facilities;

(ii)(x) First Lien on Cash Balances and Unencumbered Property: pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtors (including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries), whether existing on the Petition Date or thereafter acquired and that as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "<u>Unencumbered Property</u>");

(y) Liens Priming Prepetition Liens: pursuant to section 364(d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtors, including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries, whether now existing or hereafter acquired, that is subject to the existing liens presently securing any claims against any of the Debtors. The security interests and liens granted to the DIP Lender shall be senior in all respects to the interests in such property of any prepetition lienholder (the "<u>Primed Liens</u>");

(z) Liens Senior to All Other Liens: the DIP Liens shall be automatically perfected without the need for any further filings, and shall not be subject to, made pari passu with, or subordinated to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any other lien or security interest pursuant to sections 364(c) or (d) of the Bankruptcy Code or (iii) any other liens arising before or after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

Carve-Out:   (i) the accrued and unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant

2004385.

- 5 -

to 28 U.S.C. § 1930;

(ii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court, and so long as in accordance with the Professional Fee Budget approved by the DIP Lender, until the earlier of (x) the occurrence of an Event of Default (as defined in the DIP Facilities, and as properly noticed in writing to the Debtors and their professionals who are employed pursuant to Bankruptcy Court order), provided that professional fees and expenses incurred after an Event of Default which is waived or cured shall also be included in the Carve-Out (so long as an unwaived or uncured Event of Default has not occurred and is not continuing) and (y) the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, provided that such fees and expenses incurred pursuant to either (ii)(x) or (ii)(y) must be approved by the Court; and

(iii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court upon and after the occurrence of an Event of Default and during the continuance of such an Event of Default which is not waived or cured, or upon and after the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, in an aggregate amount not to exceed $250,000, inclusive of any allowed fees and expenses reasonably incurred by professionals retained pursuant to an order of the Court solely in connection with responding to requests a chapter 7 trustee appointed by order of the Court for the Cases makes of such professionals for transmittal of documents in their possession. In no event shall any of the Carve Out be used to pay any fees or expenses of any person retained in a chapter 7 case under sections 326, 327 or 328 of the Bankruptcy Code. No portion of the carve-out in the event of a Default may be used in connection with any litigation or investigation of Levine Leichtman Capital Partners III, L.P, in any capacity (including as DIP Lender) or its officers, directors, employees, or affiliates.

Notwithstanding the foregoing or anything herein to the contrary, no portion of the Carve-Out, or any Cash Collateral of the Debtors, may be used to investigate, commence, or prosecute any claims against the DIP Lenders in any capacity, or any officer, director, employee, or affiliate thereof, or any Indemnified Persons under the Securities Purchase Agreement or the DIP Facilities; provided that up to $25,000 may be used to investigate the extent, priority, and validity of the liens and security interests granted in connection with the Securities

2004385.

- 6 -

Purchase Agreement.

DIP Budget:

The Debtors have prepared a 13 week interim budget and cash flow forecast, prior to funding, and a monthly budget through and including May 14, 2009, which shall be subject to approval by the DIP Lender.

Milestone Covenants:

Same as provided in the Cash Collateral Stipulation and Agreement, all of which are incorporated herein by this reference and which shall be included in the DIP Credit Agreement as affirmative covenants to be performed by the Debtors.

Termination:

The DIP Facilities shall be repaid in full, and the Commitment shall terminate, at the earliest of (i) the Availability Date; (ii) the substantial consummation (as defined in Section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the effective date) of a plan of reorganization that is confirmed pursuant to a confirmation order entered by the Bankruptcy Court (iii) termination or expiration of the Borrower's exclusive right to propose and solicit acceptances to a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code; (iv) the acceleration of the loans and the termination of the Commitment in accordance with the terms of the DIP Facilities; (v) conversion of any Case to one under Chapter 7 of the Bankruptcy Crime; (vi) the sale of all or substantially all of any of the Borrower's or Guarantors' assets pursuant to Section 363 of the Bankruptcy Code; (vii) a breach of the DIP Facility; or (viii) or receipt by the Debtors of proceeds of any other financing.

Mandatory Pre-Payments:

Typical and customary for transactions of this type.

Representations and Warranties:

Usual for facilities and transactions of this type and others to be reasonably specified by DIP Lender.

Conditions Precedent to Initial Borrowing:

Usual for facilities and transactions of this type and others to be reasonably specified by DIP Lender:

(a) not later than February 3, 2009, entry of an order of the Court in substantially the form set forth as an Exhibit to the Agreement (the "Interim Order") on an application or motion by the Borrower that is reasonably satisfactory in form and substance to DIP Lender, which Interim Order shall have been entered on such prior notice to such parties (including, without limitation, the holders of the Primed Liens) as may be reasonably satisfactory to DIP Lender, approving the transactions contemplated herein and granting superpriority

claim status and senior priming and other liens referred to above, which Interim Order shall (i) authorize extensions of credit in amounts that are not in excess of the amounts set forth herein, (ii) authorize the use of cash collateral and provide for adequate protection in favor of the holders of the Primed Liens (if any) only as set forth herein, (iii) approve the payment by the Borrower of all of the fees provided for herein, and (iv) remain in full force and effect, not have been reversed, modified, amended or stayed;

(b) the Bankruptcy Court shall have entered an order (in form and substance satisfactory to DIP Lender) providing that the holders of the Primed Liens (if any) will receive, as their sole adequate protection, replacement liens on postpetition assets junior to the liens securing the Facilities;

(c) sufficient and timely notice of the DIP motion and of the proposed Interim Order shall have been given to all parties entitled to receive such notice.

<table>
<tr><td>Conditions Precedent to all Borrowings:</td><td>Compliance with all Milestone Covenants and timely delivery of and compliance with the budget; Delivery of notice of accuracy of representations and Warranties; the absence of defaults; sufficient and timely notice of the DIP motion and of the proposed Final Order shall be given to all parties entitled to receive such notice. The Interim Order or a final order in substantially the form of the Interim Order with only such modifications as are satisfactory to DIP Lender shall be and at all times remain in full force and effect, and the Final Order shall not have been reversed, modified, vacated amended or stayed without the prior written consent of the parties hereto.</td></tr>
<tr><td>Affirmative Covenants:</td><td>Affirmative covenants that are usual for facilities and transactions of this type to be specified by DIP Lender (to be applicable to the Borrower and its subsidiaries), including, without limitation, the reporting required under the Cash Collateral Stipulation and Agreement, the reporting requirements and covenants of the type set forth in the Securities Purchase Agreement (as applicable); and:</td></tr>
</table>

(a) timely satisfaction of the Milestone Covenants (defined above); and access to senior management to discuss Borrower performance, upon DIP Lender's reasonable request;

(b) delivering to DIP Lender and its counsel all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of the Borrower or any Guarantor with the Court or

- 8 -

distributed by the Borrower or any Guarantor to any official committee appointed in any of the Cases;

(c) paying all postpetition taxes and other postpetition obligations as and when due except where contested in good faith and by appropriate proceedings (if the Borrower and the Guarantors shall have set aside on their books adequate reserves therefor).

All weekly reports are due no later than Monday at 1:00 p.m. (PST) for each week.

|  |  |
|---|---|
| Negative Covenants: | Negative covenants that are usual for facilities and transactions of this type to be specified by DIP Lender (to be applicable to the Borrower and the Guarantors), including, without limitation, those of the type set forth in the Securities Purchase Agreement (as applicable). |
| Financial Covenants: | (a) minimum liquidity of $300,000; and (b) compliance with Budget. |
| Events of Default: | Similar to those that are usual for facilities and transactions of this type to be reasonably specified by DIP Lender relating to the Borrower and the Guarantors (subject, where appropriate, to thresholds and grace periods to be agreed upon), including, without limitation, |

(a) any of the Cases shall be dismissed or converted to a Chapter 7 Case, a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Borrower (powers beyond these set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases and the order appointing such Trustee, responsible officer, or examiner shall not be reversed or vacated within 30 days after the entry thereof; or any other superpriority Claim (other than the Carve-Out) which is pari passu with or senior to the claims of Levine Leichtman Capital Partners III, L.P. as prepetition lender and the DIP Lender shall be granted in any of the Cases; or the Bankruptcy Court shall enter an order terminating the use of cash collateral;

(b) other than payments authorized by the Bankruptcy Court, the Borrower or any Guarantor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition and postpetition indebtedness or payables (including, without limitation, reclamation claims);

2004385.

- 9 -

(c) the Court shall enter an order granting relief from the automatic stay, the adverse resolution of which could result in a material adverse effect; or

(d) an order shall be entered reversing, amending, supplementing, staying for a period in excess of 5 days, vacating or otherwise modifying the Interim Order or the Final Order.

Expenses and Indemnification:

The Borrower will indemnify the DIP Lender, and its respective affiliates, successors and assigns and the officers, directors, employees, managers, partners (limited and general), agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against all reasonable costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Borrower or any of its affiliates) that relates to the financing contemplated hereby, the Cases or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket expenses (including, without limitation, reasonable fees, disbursements and other charges of counsel) of DIP Lender incurred prepetition (such prepetition reasonable fees and costs estimated to be approximately $100,000) or postpetition, including with respect to enforcement costs and documentary taxes associated with the Facilities, will be paid by the Borrower upon demand or funded by the Lender Payment Shortfall Facility, as applicable.

Use of Cash Collateral:

Subject to entry of a Second Interim Cash Collateral Order and Final Cash Collateral Order, and so long as DIP Lender has received and continues to receive adequate protection described in the Cash Collateral Stipulation and Agreement and herein, the DIP Lender consents to use of cash and cash collateral by the Debtors for payment of the expenses permitted under the Budget, which Budget shall have been approved by DIP Lender.

Governing Law and Forum:

New York.

<u>Counsel to LLCP</u>:                    Irell & Manella, LLP

[Signatures to follow on the next page]

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____
Its:   CEO

SCH Corp.

By: _____
Its:   CEO

ACCS Corp.

By: _____
Its:   CEO

Levine Leichtman Capital Partners III, L.P.

By: _____
Its: _____

[Signature page to DIP Loan Terms Agreement]

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____

Its: _____


SCH Corp.

By: _____

Its: _____


ACCS Corp.

By: _____

Its: _____


Levine Leichtman Capital Partners III, L.P.

By: _____

Its: _Vice President_____


[Signature page to DIP Loan Terms Agreement]

**American Corrective Counseling Services, Inc. $4.0 million**
**Superpriority First Lien DIP Term Loan Facility**

Below are the essential terms for a DIP Facility Agreement (the "DIP Loan Terms Agreement") between American Corrective Counseling Services, Inc. and its Debtor affiliates, on the one hand (the "Debtors"), and Levine Leichtman Capital Partners III, L.P. ("LLCP"), on the other hand. Where the context requires, the Debtors and LLCP will be referred to as the "Parties." This Agreement is enforceable and effective immediately upon the execution hereof by the Parties, subject only to Bankruptcy Court approval. The Parties agree to execute definitive documents, and other documents necessary and appropriate to effectuate the terms hereof, within seven (7) days after the date hereof to further memorialize this Agreement; however, failure to do so shall not render this Agreement unenforceable in any such event. Concurrently herewith, the Parties have executed a Cash Collateral Stipulation and Agreement into which this DIP Loan Terms Agreement is incorporated.

| | |
|---|---|
| <u>Borrower</u>: | American Corrective Counseling Services, Inc. as debtor and debtor-in-possession (the "<u>Borrower</u>") in a case (the "<u>Case</u>" and, together with the cases of Parent and their domestic subsidiaries, the "<u>Cases</u>") under chapter 11 of the United States Code (the "<u>Bankruptcy Code</u>") filed in the Bankruptcy Court for the District of Delaware. |
| <u>Guarantors</u>: | SCH Corp., ACCS Corp., and each of their (and Borrower's) direct and indirect subsidiaries as debtors and debtors-in-possession in the Cases (collectively, the "<u>Guarantors</u>"). |
| <u>DIP Lender</u>: | Levine Leichtman Capital Partners III, L.P. (or its designee) (the "<u>DIP Lender</u>"). |
| <u>DIP Facilities</u>: | (i) <u>New Money Facilities</u>. The New Money DIP Facilities shall consist of a loan available in multiple draws (the "Lender Payment Shortfall Facility"). The loan provides for an interim borrowing, subject to entry of the Interim Order (as defined below), of up to $1.8 million. The loan provides for additional borrowing, subject to entry of a Final Order (as defined below), of $4.0 million, less the amount borrowed on an interim basis. |
| | (ii) <u>Roll-Up Facility</u>. Moreover, subject to entry of a Final Order, the following amounts (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement), less the amount paid to LLCP on account of amounts owing under items (ii), (iii) and (iv) below which amounts shall be paid to LLCP no later than one business day after entry of the Interim Order approving such payments, and as required herein as a consequence of the interim borrowing, would be converted, into postpetition debt under the DIP Credit Agreement: All (i) prepetition principal |

on the Secured Senior Notes issued under the Securities
Purchase Agreement dated November 10, 2004 (the
"Securities Purchase Agreement") (which is $31,613,624.62 as
of December 31, 2008); (ii) accrued and unpaid interest at the
default rate from 9/1/08 through and including the Petition
Date (which is $849,734.45); (iii) interest on unpaid interest
through and including the Petition Date (which is $
21,946.68); (iv) all additional unpaid interest at the default rate
and all outstanding fees and expenses incurred through and
including the date the Interim Order is entered (all such sums
to be rolled up in the aggregate, the "Roll-Up Agreement").
The foregoing is subject to the reservation of rights relating to
the Blocked Account Dispute described in the Cash Collateral
Stipulation and Agreement.

Debtors' Reservation of Rights.  **Notwithstanding anything
herein to the contrary,** in order to preserve the relative
positions and rights of the parties prior to the Roll-Up
Agreement and the grant of security and superpriority pursuant
to Bankruptcy Code section 364 in connection with such Roll-
Up Agreement, with respect to the issue of whether revenues
generated by the Debtors postpetition are cash collateral
subject to LLCP's prepetition security interest in its prepetition
collateral and the proceeds thereof, or whether such revenues
are not subject to LLCP's prepetition security interest by
operation of Bankruptcy Code section 552, notwithstanding
anything to the contrary herein,  if an Event of Default occurs
under (1) the DIP Facilities or the terms hereof and the DIP
Lender terminates the DIP Facilities or (2) the Cash Collateral
Stipulation and Agreement resulting in the Bankruptcy Court
terminating further cash collateral usage in accordance with
the Budget, solely for purposes of determining whether the
Debtors or their estates can seek to use revenues generated by
the Debtors postpetition (and no other purpose), the Roll-Up
Agreement shall not be deemed to have effected the
conversion of prepetition debt to postpetition debt, and the
Debtors and their estates, on the one hand, and LLCP as
prepetition lender, on the other hand, will have the same rights
and arguments under Bankruptcy Code section 552 as if the
Roll-Up Agreement had not been made and the foregoing
grant of security and superpriority had not occurred.  For
clarity, (i) the foregoing preservation of relative positions and
rights of the parties relates only to revenues generated by the
Debtors postpetition and not to any payments or distributions
made to LLCP from revenues generated by the Debtors
prepetition, regardless of when realized or collected, (ii) no
payments made by the Debtors to LLCP may be disgorged for

any reason, and (iii) new money loans by LLCP under the DIP Facilities shall be secured by a first priority lien in all revenues and collections (including revenues and collections generated by the debtors postpetition).

Purpose:

The Lender Payment Shortfall Facility shall be available to (a) make payments to the DIP Lender as described in the heading entitled "DIP Facilities: (ii) Roll-up Facility" above which are not rolled up pursuant to the Roll-Up Agreement; and (b) fund monthly payments of interest, reasonable fees and expenses of the Lender (the "Lender Payments") in the event the Debtors have insufficient cash and cash receipts to pay the expenses set forth in the Budget when due and the Lender Payments.

For clarity, cash and cash receipts (other than proceeds of the DIP Facility) shall be used first to pay expenses, to maintain the Minimum Liquidity Requirement, and then shall be used to make the Lender Payments.

Availability:

Subject to the terms and conditions of the Interim Order and the Final Order, DIP Facilities will be available from the DIP Closing Date through April 11, 2009 subject to automatic extension (without fee or cost to the Debtors or their estates) to (i) May 8, 2009 if a plan is confirmed, or (ii) in accordance with the Milestone Covenants (e.g., May 19, 2009 for outside date sale process under section 363 of the Bankruptcy Code) described in the Cash Collateral Stipulation and Agreement, all of which shall be included as affirmative covenants in the DIP Facilities (each such date, as appropriate, the "Availability Date").

Until the Final Order has been entered, availability will be limited to an amount equal to the maximum amount of DIP Facilities approved by the Bankruptcy Court pursuant to the Interim Order, not to exceed $1.8 million.

Minimum Liquidity. Loans may not be available at any time (at DIP Lender's election) if the aggregate balance of unrestricted cash and cash equivalents of the Borrower and the Guarantors and any other account of the Borrower and the Guarantors) at such time is less than $300,000.

Loans and Roll-Up:

(i) Interim Date Loan – up to $1.8 million;

(ii) Delayed Draw Loans – up to $4,000,000 less the amount of the Interim Date Loan, and available from the date the Final Order is entered through the Availability Date; and

(iii) the conversion of an amount equal to the prepetition amount to be rolled up pursuant to the Roll-Up Agreement pursuant to the section entitled "DIP Facilities: (ii) Roll-up Facility" of Debtors' obligations under the Securities Purchase Agreement into postpetition debt (including obligations to indemnify Indemnified Persons, as defined under the Securities Purchase Agreement).

Interest Rate:    15.0%; payable on the 15th and last day of each month (or the immediately preceding business day if such interest payment date occurs on a day that is not a business day).

Default Rate:    The applicable interest rate plus 2.0% per annum.

DIP Closing Date:    The Closing Date will occur promptly, but no later than one (1) day after the entry of the Interim Order (defined below) as to the Interim Draw (the "Interim DIP Closing Date"), and no later than one (1) day after entry of the Final Order (defined below) as to all other draws and financings.

Closing Fee:    $175,000 fully earned and non-refundable fee due on the Interim DIP Closing Date.

DIP Lender Legal Fees/Costs:    $200,000 retainer to be paid to Irell & Manella, plus payment of all prepetition and reasonable postpetition legal fees and costs incurred by DIP Lender, including under the Securities Purchase Agreement

Priority and Liens:    (i) pursuant to section 364(c)(1) of the Bankruptcy Code, all of the loans made under the DIP Facilities shall constitute an allowed claim (the "Superpriority Claim") against the Borrower and each Guarantor, with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, arising prior to or after the Petition Date, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328,330,331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, and which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including proceeds of all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law

(collectively, the "Avoidance Actions"), subject only to the payment of the Carve-Out to the extent specifically provided for in the Interim Order and DIP Facilities;

(ii)(x) First Lien on Cash Balances and Unencumbered Property: pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtors (including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries), whether existing on the Petition Date or thereafter acquired and that as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property");

(y) Liens Priming Prepetition Liens: pursuant to section 364(d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtors, including but not limited to all contracts and contract rights, leasehold interests of the Debtors and all inter company claims of the Borrower and each Guarantor against the Debtors' affiliates and subsidiaries, whether now existing or hereafter acquired, that is subject to the existing liens presently securing any claims against any of the Debtors. The security interests and liens granted to the DIP Lender shall be senior in all respects to the interests in such property of any prepetition lienholder (the "Primed Liens");

(z) Liens Senior to All Other Liens: the DIP Liens shall be automatically perfected without the need for any further filings, and shall not be subject to, made pari passu with, or subordinated to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any other lien or security interest pursuant to sections 364(c) or (d) of the Bankruptcy Code or (iii) any other liens arising before or after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

Carve-Out:    (i) the accrued and unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant

2004385.

to 28 U.S.C. § 1930;

(ii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court, and so long as in accordance with the Professional Fee Budget approved by the DIP Lender, until the earlier of (x) the occurrence of an Event of Default (as defined in the DIP Facilities, and as properly noticed in writing to the Debtors and their professionals who are employed pursuant to Bankruptcy Court order), provided that professional fees and expenses incurred after an Event of Default which is waived or cured shall also be included in the Carve-Out (so long as an unwaived or uncured Event of Default has not occurred and is not continuing) and (y) the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, provided that such fees and expenses incurred pursuant to either (ii)(x) or (ii)(y) must be approved by the Court; and

(iii) the accrued and unpaid fees and expenses incurred by professionals retained pursuant to an order of the Court upon and after the occurrence of an Event of Default and during the continuance of such an Event of Default which is not waived or cured, or upon and after the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, in an aggregate amount not to exceed $250,000, inclusive of any allowed fees and expenses reasonably incurred by professionals retained pursuant to an order of the Court solely in connection with responding to requests a chapter 7 trustee appointed by order of the Court for the Cases makes of such professionals for transmittal of documents in their possession. In no event shall any of the Carve Out be used to pay any fees or expenses of any person retained in a chapter 7 case under sections 326, 327 or 328 of the Bankruptcy Code. No portion of the carve-out in the event of a Default may be used in connection with any litigation or investigation of Levine Leichtman Capital Partners III, L.P, in any capacity (including as DIP Lender) or its officers, directors, employees, or affiliates.

Notwithstanding the foregoing or anything herein to the contrary, no portion of the Carve-Out, or any Cash Collateral of the Debtors, may be used to investigate, commence, or prosecute any claims against the DIP Lenders in any capacity, or any officer, director, employee, or affiliate thereof, or any Indemnified Persons under the Securities Purchase Agreement or the DIP Facilities; provided that up to $25,000 may be used to investigate the extent, priority, and validity of the liens and security interests granted in connection with the Securities

Purchase Agreement.

DIP Budget:

The Debtors have prepared a 13 week interim budget and cash flow forecast, prior to funding, and a monthly budget through and including May 14, 2009, which shall be subject to approval by the DIP Lender.

Milestone Covenants:

Same as provided in the Cash Collateral Stipulation and Agreement, all of which are incorporated herein by this reference and which shall be included in the DIP Credit Agreement as affirmative covenants to be performed by the Debtors.

Termination:

The DIP Facilities shall be repaid in full, and the Commitment shall terminate, at the earliest of (i) the Availability Date; (ii) the substantial consummation (as defined in Section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the effective date) of a plan of reorganization that is confirmed pursuant to a confirmation order entered by the Bankruptcy Court (iii) termination or expiration of the Borrower's exclusive right to propose and solicit acceptances to a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code; (iv) the acceleration of the loans and the termination of the Commitment in accordance with the terms of the DIP Facilities; (v) conversion of any Case to one under Chapter 7 of the Bankruptcy Crime; (vi) the sale of all or substantially all of any of the Borrower's or Guarantors' assets pursuant to Section 363 of the Bankruptcy Code; (vii) a breach of the DIP Facility; or (viii) or receipt by the Debtors of proceeds of any other financing.

Mandatory Pre-Payments:

Typical and customary for transactions of this type.

Representations and Warranties:

Usual for facilities and transactions of this type and others to be reasonably specified by DIP Lender.

Conditions Precedent to Initial Borrowing:

Usual for facilities and transactions of this type and others to be reasonably specified by DIP Lender:

(a) not later than February 3, 2009, entry of an order of the Court in substantially the form set forth as an Exhibit to the Agreement (the "Interim Order") on an application or motion by the Borrower that is reasonably satisfactory in form and substance to DIP Lender, which Interim Order shall have been entered on such prior notice to such parties (including, without limitation, the holders of the Primed Liens) as may be reasonably satisfactory to DIP Lender, approving the transactions contemplated herein and granting superpriority

claim status and senior priming and other liens referred to above, which Interim Order shall (i) authorize extensions of credit in amounts that are not in excess of the amounts set forth herein, (ii) authorize the use of cash collateral and provide for adequate protection in favor of the holders of the Primed Liens (if any) only as set forth herein, (iii) approve the payment by the Borrower of all of the fees provided for herein, and (iv) remain in full force and effect, not have been reversed, modified, amended or stayed;

(b) the Bankruptcy Court shall have entered an order (in form and substance satisfactory to DIP Lender) providing that the holders of the Primed Liens (if any) will receive, as their sole adequate protection, replacement liens on postpetition assets junior to the liens securing the Facilities;

(c) sufficient and timely notice of the DIP motion and of the proposed Interim Order shall have been given to all parties entitled to receive such notice.

**Conditions Precedent to all Borrowings:**

Compliance with all Milestone Covenants and timely delivery of and compliance with the budget; Delivery of notice of accuracy of representations and Warranties; the absence of defaults; sufficient and timely notice of the DIP motion and of the proposed Final Order shall be given to all parties entitled to receive such notice. The Interim Order or a final order in substantially the form of the Interim Order with only such modifications as are satisfactory to DIP Lender shall be and at all times remain in full force and effect, and the Final Order shall not have been reversed, modified, vacated amended or stayed without the prior written consent of the parties hereto.

**Affirmative Covenants:**

Affirmative covenants that are usual for facilities and transactions of this type to be specified by DIP Lender (to be applicable to the Borrower and its subsidiaries), including, without limitation, the reporting required under the Cash Collateral Stipulation and Agreement, the reporting requirements and covenants of the type set forth in the Securities Purchase Agreement (as applicable); and:

(a) timely satisfaction of the Milestone Covenants (defined above); and access to senior management to discuss Borrower performance, upon DIP Lender's reasonable request;

(b) delivering to DIP Lender and its counsel all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of the Borrower or any Guarantor with the Court or

2004385.

- 8 -

distributed by the Borrower or any Guarantor to any official committee appointed in any of the Cases;

(c) paying all postpetition taxes and other postpetition obligations as and when due except where contested in good faith and by appropriate proceedings (if the Borrower and the Guarantors shall have set aside on their books adequate reserves therefor).

All weekly reports are due no later than Monday at 1:00 p.m. (PST) for each week.

| | |
|---|---|
| Negative Covenants: | Negative covenants that are usual for facilities and transactions of this type to be specified by DIP Lender (to be applicable to the Borrower and the Guarantors), including, without limitation, those of the type set forth in the Securities Purchase Agreement (as applicable). |
| Financial Covenants: | (a) minimum liquidity of $300,000; and (b) compliance with Budget. |
| Events of Default: | Similar to those that are usual for facilities and transactions of this type to be reasonably specified by DIP Lender relating to the Borrower and the Guarantors (subject, where appropriate, to thresholds and grace periods to be agreed upon), including, without limitation, |

(a) any of the Cases shall be dismissed or converted to a Chapter 7 Case, a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Borrower (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases and the order appointing such Trustee, responsible officer, or examiner shall not be reversed or vacated within 30 days after the entry thereof; or any other superpriority Claim (other than the Carve-Out) which is pari passu with or senior to the claims of Levine Leichtman Capital Partners III, L.P. as prepetition lender and the DIP Lender shall be granted in any of the Cases; or the Bankruptcy Court shall enter an order terminating the use of cash collateral;

(b) other than payments authorized by the Bankruptcy Court, the Borrower or any Guarantor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition and postpetition indebtedness or payables (including, without limitation, reclamation claims);

2004385.

- 9 -

(c) the Court shall enter an order granting relief from the automatic stay, the adverse resolution of which could result in a material adverse effect; or

(d) an order shall be entered reversing, amending, supplementing, staying for a period in excess of 5 days, vacating or otherwise modifying the Interim Order or the Final Order.

**Expenses and Indemnification:** The Borrower will indemnify the DIP Lender, and its respective affiliates, successors and assigns and the officers, directors, employees, managers, partners (limited and general), agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against all reasonable costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Borrower or any of its affiliates) that relates to the financing contemplated hereby, the Cases or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket expenses (including, without limitation, reasonable fees, disbursements and other charges of counsel) of DIP Lender incurred prepetition (such prepetition reasonable fees and costs estimated to be approximately $100,000) or postpetition, including with respect to enforcement costs and documentary taxes associated with the Facilities, will be paid by the Borrower upon demand or funded by the Lender Payment Shortfall Facility, as applicable.

**Use of Cash Collateral:** Subject to entry of a Second Interim Cash Collateral Order and Final Cash Collateral Order, and so long as DIP Lender has received and continues to receive adequate protection described in the Cash Collateral Stipulation and Agreement and herein, the DIP Lender consents to use of cash and cash collateral by the Debtors for payment of the expenses permitted under the Budget, which Budget shall have been approved by DIP Lender.

**Governing Law and Forum:** New York.

<u>Counsel to LLCP</u>:              Irell & Manella, LLP

[Signatures to follow on the next page]

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____
Its: _____CEO_____

SCH Corp.

By: _____
Its: _____CEO_____

ACCS Corp.

By: _____
Its: _____CED_____

Levine Leichtman Capital Partners III, L.P.

By: _____
Its: _____

[Signature page to DIP Loan Terms Agreement]

2004385.

- 12 -

Agreed to, effective and enforceable, subject only to Bankruptcy Court approval, as of January 28, 2009. Each signatory below represents and warrants that they have authority to bind the entity for which they are signing.

ACKNOWLEDGED, ACCEPTED AND AGREED:

American Corrective Counseling Services, Inc.

By: _____
Its: _____

SCH Corp.

By: _____
Its: _____

ACCS Corp.

By: _____
Its: _____

Levine Leichtman Capital Partners III, L.P.

By: _____
Its: / Vice President

[Signature page to DIP Loan Terms Agreement]

2004385.

- 12 -