# Exhibit H

<u>**3/04/09 WORKING DRAFT**</u>

# AMERICAN CORRECTIVE GROUP

## TERM SHEET FOR MANAGEMENT COMPENSATION

1. <u>Managment Agreement</u>[1]:

   a. <u>Senior Management Employment/Consulting Agreements</u>[2].

   (i) *Term:* Schreck, Stohlton and Wilhelms two years

   (ii) *Severance Payments.* In the event any member of Senior Management is terminated prior to the expiration of the term of their agreement by the Company "without cause" or by the member of Senior Management for "good reason"[3] [4] such member will receive a severance payment in a lump sum equal to their then-current base salary for twelve months for Schreck and nine months for Stohlton and Wilhelms, a full performance bonus for the contract year in which the termination occurs and reimbursement for their benefits for the duration of the term of the agreement[5]. In addition, unless a member of senior management receives an offer from the Company to continue their employment pursuant to an amendment to the existing agreement for at least an additional two years with base compensation of at least 120% of their then current base compensation and additional equity grants or other equity participation in the Company, upon the expiration of the term of the agreements the members of Senior Management shall be entitled to receive lump sum severance payments of their then base compensation as follows: Schreck twelve months and Stohlton and Wilhelms nine months, and shall continue to receive reimbursement for their benefits for the duration of such period.

   (iii) *Compensation.* See Item 2 below.

   (iv) *Benefits*: Senior Management shall receive benefits (Health, dental, life, disability insurance, automobile allowance, vacation pay etc.) equal to or greater than what is currently provided to them by the Company or in the case of Schreck and Stohlton, cash payments which are on an after-tax basis sufficient to maintain the same level of benefits as are currently being provided to them. Senior Management shall also receive reimbursement of tax preparation expense. Benefits will be consistent with reasonable and customary benefits for the position and will be updated from time to time by the Company to be consistent with similarly situated executives in comparable companies.

---

[1] Senior Management: Michael Schreck (CEO), Brett Stohlton (COO) and Mike Wilhelms (CFO)
[2] Schreck and Stohlton will be engaged pursuant management agreement whereby their services will be "loaned out." Wilhelms will have an employment agreement with the Company.
[3] In the event of a Termination "without cause" by the Company or a termination "for good reason" by any members of Senior Management, the new LLC Profits Interest held by such terminated member of Senior Management would immediately be 100% vested.
[4] "Good reason" shall mean the occurrence of any of the following: (i) material change in job title or responsibilities; (ii) relocation of principal place of employment outside of Orange County, CA; (iii) diminution in base salary, benefits, or other compensation from that which is agreed to herein or breach of any employment agreement by the Company.
[5] The severance payment and bonus shall be liquidated damages and shall not be subject to mitigation.

(v) *Legal Fees*. The Senior Management's agreements shall provide that the Company shall reimburse the members of Senior Management for legal fees and expenses incurred in connection with the negotiation, drafting and execution of all applicable documents with respect to their initial post-Bankruptcy employment arrangements, including the term sheet for the MIP. In addition, such agreements shall provide that each member of Senior Management shall be entitled to be reimbursed for any legal fees or expenses incurred by them in connection with the interpretation of or the enforcement of their rights under such agreements, their rights or obligations pursuant thereto, any compensation arrangement contemplated thereby or in connection with any amendments or modifications thereof.

(vi) *Board Representation*. The controlling entity of the reorganized Company would agree that the Board of Managers or Board of Directors of the Company will consist of 5 members as follows: (i) 3 members designated by such controlling entity; (ii) the Company's CEO and (iii) the Company's CFO. In the event there is an Executive Committee of the Board, the CEO shall serve on it.

(vii) *Other Agreement Terms*. Members of Senior Management shall be entitled to indemnification and advancement of expenses from the Company to the maximum extent allowable under applicable law, and will be covered by Directors and Officers Liability Insurance and other applicable insurance in coverage amounts equal to or greater than the levels as are currently being provided. The Company's obligation for indemnification and advancement of expenses will be guaranteed by the Company's parent company. Senior Management Base Compensation payments will continue during periods of temporary disability. Termination for "cause," shall be limited to conviction of felony which has a material adverse effect on the Company, acts of fraud or misfeasance against the Company which has a material adverse effect on the Company or continuous material breaches of their agreement with the Company after opportunity to cure.

2. Compensation[6]:

a. *Signing Bonus*. Michael Schreck shall be entitled to receive a signing bonus of $80,000 and Brett Stohlton $60,000 upon the execution of their agreements. Theses amounts are to be paid in two equal installments; one upon signing and the remainder six months later.

b. *Base Compensation*. The Base Compensation for the members of Senior Management would be as follows:[7][8]

| Senior Manager | Amount | % Increase |
|---|---|---|
| Michael Schreck | $415,000 | 20.6% |
| Brett Stohlton | $300,000 | 19.5% |
| Mike Wilhelms | $275,000 | 10.0% |

---

[6] Increases in Base Compensation and any EBITDA Bonuses or Incentive Bonuses paid to Senior Management or Key Employees would be exempt from the calculation of the Company's EBITDA and related LLCP Note covenants, if any.

[7] Base Compensation Payments to Schreck and Stohlton's loan out company would be increased to provide for employer payroll and similar taxes and any income taxes attributable to such increases in base compensation payments at the highest applicable marginal rates, per the terms agreed in the current Management Agreements.

[8] With minimum annual 5% COLA adjustments.

c. *EBITDA Bonus.* 2.5% of EBITDA shall be allocated to Senior Management per the Board's Compensation Committee, per the recommendation of Michael Schreck.

d. *Incentive Bonuses.* In addition to the EBITDA Bonuses, additional Incentive Bonuses shall be allocated as follows:

(i) If the Company achieves 90% of budget and has positive EBITDA an additional 2.5 % of the EBITDA would be allocated 50% to Senior Management and 50% to Key Employees (to be designated by Michael Schreck);

(ii) If the Company achieves 100% of budget and has positive EBITDA an additional 2.5 % of the EBITDA would be allocated 75% to Senior Management and 25% to Key Employees;

(iii) If the Company achieves 110% of budget and has positive EBITDA an additional 2.5 % of the EBITDA would be allocated 90% to Senior Management and 10% to Key Employees.

The allocation of the portions of the Incentive Bonuses which are distributed to members of Senior Management and to Key Employees will be determined by the Board's Compensation Committee, per the recommendation of Michael Schreck.

e. LLC Profits Interests ("PIs").[9] The Company would allocate the issuance of up to 25% of the restructured Company's outstanding equity on a fully diluted basis[10] to an Equity Plan for Senior Management, Key Employees and other key management personnel as designated by the Company's Board of Directors in the future. The equity would be in the form of limited liability company profits interests in the increase in value over the post-Bankruptcy FMV, designed to afford long term capital gain treatment to the recipients. Initially, PIs representing 21% of the restructured Company's outstanding equity on a fully diluted basis would be granted, the initial grants shall be allocated as follows: 8% to Schreck; 6% to Stohlton; 2% to Wilhems and 5% to Key Employees as designated by the Company's Board of Directors, per the recommendation of Schreck. The initial PIs granted to Senior Management shall be at a value equal to the Company's initial post-Bankruptcy FMV and shall vest over a period of four years with 40% vested upon grant and 1.25% per month thereafter.[11] Key Employee PIs would vest over four

---

[9] We propose LLC profits interests to afford long term capital gain treatment to the recipients of equity. We are willing to consider other alternatives to obtain long term capital gains, including common/preferred stock structures.

[10] All equity percentages are on a fully diluted basis assuming the issuance of all new equity interests upon the consummation of the restructuring. In addition all Senior Management PIs will be afforded full anti-dilution protections against subsequent issuances of equity by the Company for a period of one year from the grant date and thereafter if the sales price is less than the then FMV thereof.

[11] Unless any Senior Manager is terminated by the Company without cause or terminates for "Good Reason" (which would include a change of control) in which case their PIs would vest immediately. The vesting of the PIs for Senior Management would also be accelerated faster than the time based vesting based upon the Company reaching target levels of EBITDA of:
    A. After the first year :
        $9 million of EBITDA TTM (adjusted for NREs) would equal 65% vesting
        $9.5 million of EBITDA TTM (adjusted for NREs) would equal 90% vesting
        $10 million of EBITDA TTM (adjusted for NREs) would equal 100% vesting
    B. After the second year :
        $10 million of EBITDA TTM (adjusted for NREs) would equal 85% vesting

3

years with a cliff-vest of 25% one year from the date of grant and 6.25% vesting quarterly commencing one year from the date of grant (consistent with the current ISO plan). Vesting of all PIs will accelerate to 100% vested in the event of a liquidity event, including a change in control. The PIs will be payable upon a liquidity event, including change in control and sale of the company. In the event any member of Senior Management's employment/consulting arrangement terminates other than "for cause," such member of Senior Management shall be entitled to "put" any PI issued to them for a purchase price in cash equal to the increase in the Company FMV from date of issuance to the date of termination,[12] multiplied by the percentage interest of equity holder. The Company in its sole discretion may make the payment of this "put price" in four equal installments with the initial installment of 25% upon the exercise of the "put" and the balance in three equal, bi-annual installments (every 6 months) thereafter. Until such time as the Company's equity is publicly traded, in the event a Key Employee's employment with the Company terminates, the Company shall have the right for 90 days thereafter to "call" any PI issued to Key Employees for a purchase price in cash equal to the increase in the Company FMV from the date of issuance to the date of termination, multiplied by the percentage interest of the equity holder. The Company in its sole discretion may make the payment of this "call price" in five equal installments with the initial installment of 20% upon the exercise of the "call" and the balance in four equal, bi-annual installments (every 6 months) thereafter. PIs would have piggy back registration rights so that they could be publicly traded upon exercise (subject to applicable "insider trading" rules) after the Company's equity is publicly traded.[13]

---

$10.5 million of EBITDA TTM (adjusted for NREs) would equal 100% vesting
C. After the third year $11 million of EBITDA TTM (adjusted for NREs) would equal 100% vesting

[12] The FMV at the time of termination will be determined by a mutually agreed third party appraisal process if the parties cannot agree within 15 days.
[13] Senior Management and other executive employee's would also have the right to piggy back onto a Company registration statement the reoffer and resale of their equity interests (since they may be deemed "affiliates" and as such their sale of equity (even if the issuance of such equity to them is covered by a registration statement, would be subject to volume restrictions under the Federal securities laws).

4

**Weintraub, William**

___

**From:** Weintraub, William
**Sent:** Friday, March 13, 2009 6:05 AM
**To:** 'Jason Schauer'; ken@schwartz-cera.com
**Cc:** 'Steinberg, Howard'; 'Wiener, Ian'
**Subject:** RE: ACCS: post-sale compensation

I will forward this. I do not represent management on this and will not be reading it.

___

**From:** Jason Schauer [mailto:jschauer@llcp.com]
**Sent:** Friday, March 13, 2009 1:02 AM
**To:** Weintraub, William; ken@schwartz-cera.com
**Cc:** 'Steinberg, Howard'; 'Wiener, Ian'
**Subject:** ACCS: post-sale compensation

Bill and Ken, below are the terms Newco would like to offer to the Officers for post-sale compensation. I presume the Officers have their own counsel to negotiate these points (and these points will not be negotiated by professionals hired by the debtors' estates) so if you like, you may forward this email to that counsel and I will deal directly with them – or let me know who that is and I will forward this email to them. If you have any questions, please call me. I'll be out of the office tomorrow and in San Diego this weekend, but email and cell phone are always available. I think we will be able to respond tomorrow to the DIP supplement you sent us yesterday (thank you for that). After that, only major issue is the revised DIP Budget which I'm hoping we can finalize early next week. The terms below are subject to mutually agreeable documentation.

1. Schreck Stohlton and Wilhelms (the "Officers") will each receive employment agreements for a one year term with terms similar to those contained in current employment agreements with Schreck/Stohlton (the "Prepetition Agreements"), except as specifically set forth below. As the Officers will be employed by Newco, separate consulting agreements will not be necessary.

2. Severance Payments. 6 months if terminated without cause or an Officer leaves for good reason, same terms as Prepetition Agreements.

3. Health Benefits. Same as offered to all employees of Newco (which is contemplated to be the same as what was offered by Oldco prior to the petition date). No reimbursement of tax preparation expense.

4. Legal Fees. Officers shall be responsible for their own legal fees in connection with the MIP and their Newco employment agreements.

5. Newco LLC agreement shall have at least 3 members, one of which shall be the CEO. The CFO shall attend all board meetings unless excused by a majority of the Board.

6. The Officers shall receive traditional and customary indemnifications for their position to the maximum extent permitted under Delaware law. Newco's obligation to indemnify and advance expenses shall not be guaranteed by any other entity or person.

7. No signing bonus

8. Base salary shall be at the same levels as prepetition compensation, with 5% annual COLA adjustments.

9. Bonus Plan:

The total bonus pool available for the Officers and other Key Employees (as determined by the Officers) in any year is up

to 7.5% of EBITDA up to a max of $1,000,000. The actual percentage of EBITDA earned will be based on achieving EBITDA Targets

| % of EBITDA Target Achieved | Total Bonus Pool | Senior Management Percentage | Key Employee Percentage |
|---|---|---|---|
| Less than 90% | 0% of EBITDA | n.a. | n.a. |
| >90% and <100% | 2.50% of EBITDA | 50% of Total Bonus Pool | 50% of Total Bonus Pool |
| >100% and <110% | Add'l 2.50% of EBITDA | 60% of Add'l Total Bonus | 40% of Add'l Total Bonus |
| >110% | Add'l 2.50% of EBITDA | 70% of Add'l Total Bonus | 30% of Add'l Total Bonus |

10. Option Plan: Newco will establish a stock option plan at closing for the Officers and other Key Employees (as determined by the Officers) equal to 15% of the fully diluted ownership of the company. For each grant, options will vest as follows:

Time Vesting: 33% of the granted options will vest based on continued service with Newco over a 5 year period. 20% of the Time Vested Options will vest each year on the anniversary of granting.

Performance Based Vesting: 67% of the granted options will vest based on achievement of annual EBITDA Targets

The exercise price of options will be FMV.

3/25/2009