# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------x
                                                    :
In re:                                              :          Chapter 11
                                                    :
SCH Corp., et al.,[1]                               :          Case No. 09-10198 (BLS)
                                                    :
                        Debtors.                    :          (Jointly Administered)
                                                    :
----------------------------------------------------x
```

## FIRST AMENDED PLAN OF LIQUIDATION OF SCH CORP., AMERICAN CORRECTIVE COUNSELING SERVICES, INC. AND ACCS CORP. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY LEVINE LEICHTMAN CAPITAL PARTNERS III, L.P.

---

[1] The Debtors in these cases are SCH Corp.; American Corrective Counseling Services, Inc.; and ACCS Corp.

2101312.1 03

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS..................................................................................................2

PRELIMINARY STATEMENT .......................................................................................6

ARTICLE 1 DEFINED TERMS, RULES OF INTERPRETATION,
      COMPUTATION OF TIME AND GOVERNING LAW ....................................6

    A.      Rules of Interpretation, Computation of Time and Governing Law........................6

    B.      Defined Terms .........................................................................................7

ARTICLE 2 ADMINISTRATIVE CLAIMS, PROFESSIONAL  FEES AND
      PRIORITY TAX CLAIMS................................................................................21

    A.      Introduction..........................................................................................21

    B.      Administrative Claims ............................................................................21

    C.      Professional Fee Claims..........................................................................22

    D.      Priority Tax Claims.................................................................................23

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLASSIFIED
      CLAIMS AND EQUITY INTERESTS................................................................23

    A.      Summary...............................................................................................23

    B.      Classification and Treatment of Claims against the Debtor ....................23

ARTICLE 4 ACCEPTANCE OR REJECTION OF THE PLAN .................................30

    A.      Voting Classes ......................................................................................30

    B.      Acceptance by Impaired Classes .............................................................30

    C.      Presumed Acceptance/Rejection of Plan ................................................31

    D.      Nonconsensual Confirmation..................................................................31

    E.      How to Vote ..........................................................................................31

ARTICLE 5 MEANS FOR IMPLEMENTATION OF THE PLAN............................32

    A.      Substantive Consolidation .....................................................................32

B.      Available Cash ................................................................................................33

C.      Handling of Plan Assets and Collection of Plan Proceeds ....................................33

D.      General Litigation ...........................................................................................33

E.      Mealing Litigation, Other General Litigation, and LLCP Plan
        Expenses ......................................................................................................34

F.      No Third Party Releases ..................................................................................35

G.      Payment of Plan Expenses ...............................................................................35

H.      Distribution of Plan Proceeds ..........................................................................35

I.      Post-Confirmation Operations of the Liquidating Debtors....................................36

J.      Power and Authority of Responsible Officer........................................................36

K.      Liquidation and Dissolution of the Liquidating Debtors .......................................37

L.      Full and Final Satisfaction ...............................................................................37

M.      Distribution Procedures ...................................................................................37

N.      Disbursing Agent ............................................................................................38

O.      Reserve Accounts............................................................................................38

P.      Resolution of Disputed Claims ..........................................................................38

Q.      Reserve Provisions for Disputed Claims .............................................................39

R.      Allocation of Distributions ...............................................................................41

S.      Rounding........................................................................................................41

T.      No Interim Cash Payments if Not Economically Feasible .....................................41

U.      Disputed Payments..........................................................................................41

V.      Unclaimed Property .........................................................................................41

W.      No Distributions on Late-Filed Claims...............................................................42

X.      Withholding Taxes...........................................................................................42

Y.      U.S. Trustee Fees. ..........................................................................................42

Z.      Compromise and Settlement..............................................................................42

ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ...................................................................42

    A.    Rejection of Executory Contracts and Unexpired Leases.......................42

    B.    Claims Based on Rejection of Executory Contracts or Unexpired
Leases.................................................................................................43

ARTICLE 7 CONDITIONS PRECEDENT TO CONFIRMATION  OF THE
PLAN AND TO THE EFFECTIVE DATE..........................................43

    A.    Conditions to Confirmation of the Plan .................................................43

    B.    Conditions to the Effective Date ...........................................................43

    C.    Effect of Failure of Conditions to Effective Date ....................................44

ARTICLE 8 EFFECTS OF CONFIRMATION ............................................44

    A.    Binding Effect of Plan .........................................................................44

    B.    Revesting of Property of Debtors ..........................................................44

    C.    Property Free and Clear .......................................................................44

    D.    Limitation of Liability..........................................................................45

    E.    Releases.............................................................................................45

    F.    Plan Injunction ..................................................................................46

    G.    Post-Confirmation Liability of Responsible Officer, Litigation
Designee, and Disbursing Agent..........................................................47

    H.    Insurance ..........................................................................................48

ARTICLE 9 RETENTION OF JURISDICTION ..........................................48

ARTICLE 10 MISCELLANEOUS ............................................................49

    A.    Revocation of Plan of Reorganization ...................................................49

    B.    Severability of Plan Provisions..............................................................49

    C.    Governing Law ...................................................................................49

    D.    Exhibits ............................................................................................50

    E.    Notices .............................................................................................50

F.   Reservation of Rights..................................................................................51

G.   Computation of Time Periods.....................................................................51

H.   Defects, Omissions and Amendments ........................................................51

I.   Filing of Additional Documents ................................................................51

J.   Successors and Assigns...............................................................................52

K.   Setoffs and Recoupments............................................................................52

L.   Tax Exemption.............................................................................................52

M.   Plan Interest Rate ........................................................................................52

N.   Implementation ...........................................................................................52

O.   Record Date .................................................................................................53

P.   Certain Actions ...........................................................................................53

Q.   Waiver of Ten (10) Day Stay......................................................................53

R.   Substantial Consummation ........................................................................54

## PRELIMINARY STATEMENT

Pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, Levine Leichtman Capital Partners III, L.P. ("LLCP") hereby proposes the following First Amended Plan of Liquidation (the "Plan") for SCH Corp. ("SCH"), American Corrective Counseling Services, Inc. ("American Counseling") and ACCS Corp. ("ACCS"), debtors and debtors-in-possession in the above-captioned Chapter 11 Cases[2] (collectively, the "Debtors"). Reference is made to the First Amended Disclosure Statement (the "Disclosure Statement") accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations and properties, and the post-petition sale of substantially all of the Debtors' assets to NCG, and analysis of the Plan. All Holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully -- and consult with their counsel and other applicable professionals -- before voting to accept or reject the Plan.

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtors. With the Plan, Creditors will receive a Disclosure Statement that provides information concerning the Debtors and the Plan and certain Creditors will also receive a Ballot for voting for or against the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtors, a summary of what Creditors and Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for Confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed, or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

## ARTICLE 1

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time and Governing Law

1.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.

substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to part includes the whole, except where the context clearly requires otherwise; (g) "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.    "Administrative Claim" means a Claim for costs and expenses of administration under section 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of goods received by the debtor within 45 days before the Petition Date in which the goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date; and (g) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

2.    "Administrative Claims Bar Date" means the date that is thirty (30) calendar days after the date first set by the Bankruptcy Court for the Confirmation Hearing. Notice of the Administrative Claims Bar Date shall be given to those persons who receive notice of the Confirmation Hearing.

3.     "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors or any other party in interest has not Filed an objection on or before the 90th day after the Effective Date or such date set by order of the Bankruptcy Court; (b) a Claim that is set forth in a timely-filed Proof of Claim as to which no objection has been Filed; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Debtors on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Tax Claim or Other Priority Claim executed by (x) the Debtors and approved by the Bankruptcy Court, or (y) the Liquidating Debtors; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely-Filed by the Claimant before the applicable Rejection Bar Date for such claim or has otherwise been deemed timely Filed under applicable law; or (f) a Claim that is Allowed pursuant to the terms of this Plan.

4.     "Allowed Calculation Amount" means, (i) with respect to the Holder of an Allowed Claim in Class 2A or Class 3A, $1.00; and (ii) with respect to the Holder of an Allowed Claim in Class 4A, 4B or Class 5, the Allowed amount of such Claim.

5.     "Allowed Claim" means a Claim that has been Allowed.

6.     "Allowed Distribution Amount" means, for purposes of this Plan only and for no other purpose, (i) with respect to the dollar amount of distributions that the Holder of an Allowed Claim in Class 2A or Class 3A is entitled to receive on account of its Allowed Claim, the dollar amount that results from the calculation of Pro Rata share of Net Plan Proceeds using such Holder's Allowed Calculation Amount, but in no event shall the aggregate dollar amount of all distributions made to such Holder under this Plan on account of such Holder's Allowed Claim exceed such Holder's Class Claimant Distribution Cap; and (ii) with respect to dollar amount of distributions that the Holder of an Allowed Claim in any Class other than Classes 2A and 3A is entitled to receive on account of its Allowed Claim, the Allowed amount of such Claim.

7.     "Amended Schedule Bar Date" means the deadline by which parties whose Claims have been amended by the Debtors (the "Affected Claimants") in the Schedules have to file a Proof of Claim in response to such amendment. An Affected Claimant shall have until the later of (i) the Bar Date and (ii) thirty (30) days after the date that notice of the applicable amendment to the Schedules is served on the Affected Claimant in which to File a Proof of Claim or amend any previously filed Poof of Claim in respect of the amended scheduled claim.

8.     "Auction" means the auction for the Sale of substantially all of the Debtors' assets that was held on March 30, 2009.

9.    "Available Cash" means the aggregate amount of all Cash held by the Debtors on the Effective Date, including the Cash from the Sale Proceeds and any General Litigation Recovery or any Liquidation Proceeds collected by the Debtors prior to the Effective Date but excluding any cash on deposit in the Professional Fees Escrow Account, or any other amounts deposited for payment of Estate Professionals.

10.    "Avoidance Actions" means all claims and causes of action which the Debtors have or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code other than claims or causes of action under chapter 5 of the Bankruptcy Code against any party to an executory contract that was assigned to NCG, pursuant to the Sale, or against LLCP.

11.    "Ballot Date" means the date stated in the Voting Instructions by which all Ballots must be received, which date shall be October 26, 2009 at 4:00 p.m.

12.    "Ballots" means the ballots upon which Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

13.    "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, as set forth in sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

14.    "Bankruptcy Court" means the United States District Court for the District of Delaware having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to Section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

15.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to these Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

16.    "Bar Date" means May 18, 2009.

17.    "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

18.    "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

19.    "Cash Collateral Agreement and Stipulation" means that certain Cash Collateral Agreement and Stipulation, dated as of January 28, 2009, as amended or modified from time to time, between the Debtors and LLCP.

20.    "CFI Class Actions" means the class actions or putative class actions pending in United States District Courts in California (the "California Class Action"), Florida

(the "Florida Class Action") and Indiana (the "Indiana Class Action"), and styled respectively as: *Del Campo v. American Corrective Counseling Services*, Case No. 01-21151-JW (N.D. Cal.); *Rosario v. American Corrective Counseling Services*, Case No. 2:01-CV-221-FtM-29DNF, (M.D. Fla.); and *Hamilton v. American Corrective Counseling Services*, Case No. 3:05-CV-434 (N.D. Ind.).

21.　"CFI Class Action Claimants" means the Holders of CFI Class Action Monetary Claims and CFI Class Action Non-Monetary Claims.

22.　"CFI Class Action Monetary Claims" means, as the context requires, on an individual basis, the Claim of each member or putative member in each class or putative class in the CFI Class Actions who paid money to, or for the account of, the Debtors in connection with or on account of a bad check diversion program conducted by the Debtors prior to the Petition Date prior, and, on an aggregate basis, the Claims of all such members or putative members in all such classes or putative classes in the CFI Class Actions.

23.　"CFI Class Action Non-Monetary Claims" means, as the context requires, on an individual basis, the Claim of each member or putative member in each class or putative class in the CFI Class Actions who did not pay any money to, or for the account of, the Debtors in connection with or on account of a bad check diversion program conducted by the Debtors prior to the Petition Date, and, on an aggregate basis, the Claims of all such members or putative members in all such classes or putative classes in the CFI Class Actions.

24.　"Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re SCH Corp. et al.*, Case No. 09-10198 (BLS) (Jointly Administered), currently pending before the Bankruptcy Court.

25.　"Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against any Debtor, including, but not limited to: (a) any right to payment from any Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

26.　"Claims Agent" means Administar Services Group LLC.

27.　"Claimant" means the Holder of a Claim.

28.　"Claims Reserve Account" means an interest bearing bank account or money market account to be established and held in trust by the Disbursing Agent on or after the Effective Date for the purpose of holding the Plan Proceeds (and with respect to the General Litigation Recoveries, the Plan Proceeds derived from the General Litigation Recoveries net of professional fees and costs associated with such General Litigation) to be distributed under the Plan and any interest, dividends or other income earned upon the investment of such Claims Reserve Account.

29.     "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 of the Plan.

30.     "Class Actions" means the CFI Class Actions and the PA Class Action.

31.     "Class Action Claimants" means the CFI Class Action Claimants and the PA Class Action Claimants.

32.     "Class Action Claims" means the CFI Class Action Claims and the PA Class Action Claims.

33.     "Class Claimant Distribution Cap" means, as to each Holder of an Allowed Class 2A Claim or an Allowed Class 3A Claim, $1,000, which is the statutory cap under the FDCPA, 15 U.S.C. § 1692k(a)(2)(A).

34.     "Closing Date" means April 11, 2009.

35.     "Confirmation" means the entry of the Confirmation Order.

36.     "Confirmation Date" means the date the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

37.     "Confirmation Hearing" means the date set by the Bankruptcy Court to consider Confirmation of the Plan.

38.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

39.     "Consummation" or "Consummate" means the occurrence of or to achieve the Effective Date.

40.     "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not Filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

41.     "Creditor" means any Holder of a Claim against any Debtor that arose on or prior to the Petition Date.

42.     "D&O Indemnification Claims" means any Claims held by any former officers or directors of any of the Debtors for indemnity, contribution, or reimbursement, arising from or based upon claims asserted or threatened against any such persons by third parties.

43.     "Debtors" means SCH, American Counseling and ACCS.

44. "Debtors in Possession" means SCH Corp., American Corrective Counseling Services, Inc. and ACCS Corp., as debtors in possession in these Chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

45. "Debt" means liability on a Claim.

46. "Deferred Professional Fee Claims" means any Allowed Professional Fee Claims that were incurred by the Debtors before the Effective Date and that, with the express written consent of the affected Professional, are not paid on or before the Effective Date but instead are deferred for payment at a later date. Any Deferred Professional Fee Claims shall be paid from Plan Proceeds as and when such funds become available.

47. "DIP Amendment Order" means the "Order Approving Amendments to Final DIP Order, DIP Loan Terms Agreement and Cash Collateral Agreement and Stipulation and Authorizing Debtors to Incur Additional Postpetition Financing" [Docket No. 382] entered by the Bankruptcy Court on April 23, 2009.

48. "DIP Loan Terms Agreement" means that certain DIP Loan Terms Agreement, dated as of January 28, 2009, as amended or modified from time to time, between the Debtors and LLCP.

49. "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

50. "Disbursing Agent" means the Liquidating Debtors, or such other such person or persons designated to act as the disbursing agent for the purpose of making the distributions required under the Plan. The Confirmation Order shall identify the Disbursing Agent and may provide for one or more persons to serve in the capacity of Disbursing Agent.

51. "Disclosure Statement" means the Disclosure Statement, dated August 5, 2009, as amended, supplemented, or modified from time to time.

52. "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

53. "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later

deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a Proof of Claim is required to be Filed and no such Proof of Claim is Filed or, if Filed, is Filed after the applicable Bar Date for such Claim; (iii) any Contingent Claim or Unliquidated Claim; (iv) any Claim scheduled by the Debtors in the Schedules as disputed, contingent or unliquidated; (v) a Proof of Claim Filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (vi) a Claim that is not listed in the Schedules. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

54.    "Disputed Claims Amount" means the aggregate amount of Disputed Claims that are fixed and absolute. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon either (i) the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim, (ii) the amount at which the Bankruptcy Court may estimate such Disputed Claim, or (iii) the amount which the Disbursing Agent determines in its reasonable judgment is the appropriate amount to be reserved for such Disputed Claim.

55.    "Distribution Amount" means, as to each Holder of an Allowed Claim in Class 2, 3, 4, or 5, as applicable, an amount equal to the Net Plan Proceeds multiplied by a fraction, the numerator of which is the Allowed amount of the Claim of such Holder, and the denominator of which is the total amount of all Allowed Claims in Classes 2, 3, 4, and 5. For purposes of calculating the Distribution Amount for the Holder of an Allowed Claim in Class 2, 3, 4, or 5, the Allowed amount of such Holder's Claim shall be deemed to be such Holder's Allowed Calculation Amount.

56.    "Effective Date" means the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article 7 of the Plan have been satisfied or waived in accordance with Article 7.

57.    "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

58.    "Equity Interest" means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

59.    "Estates" means the estates of the Debtors in these Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

60.    "Excluded Assets" shall have the meaning assigned to such term in the Purchase Agreement.

61.    "Excluded Liabilities" shall have the meaning assigned to such term in the Purchase Agreement.

62.    "FDCPA" means the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k.

63.    "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

64.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

65.    "Final DIP Order" means the "Final Order, Pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1) and 364(e) of the Bankruptcy Code and Bankruptcy Rules 4001(c) and 4001(d), (A) Approving Cash Collateral Agreement and Stipulation, (B) Authorizing Debtors' Use of Cash Collateral Consistent Therewith and (C) Authorizing Debtors to Incur Postpetition Financing Pursuant to DIP Loan Terms Agreement" [Docket No. 136] entered by the Bankruptcy Court on February 18, 2009.

66.    "Final Distribution Date" means the date of the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

67.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

68.    "Final Resolution Date" means the date on which all Disputed Claims in each and every Class shall have been resolved by Final Order or otherwise finally determined.

69.    "First Amendment" means that certain First Amendment to Asset Purchase Agreement, dated as of April 11, 2009, by and among the Debtors and NCG.

70.    "General Litigation" means the interest of the Estates or the Liquidating Debtors, as applicable, in any and all claims, rights or causes of action which have been or may be commenced by the Debtors or the Liquidating Debtors, as applicable. General Litigation includes, without limitation, (i) any Avoidance Actions; (ii) any action for the turnover of property to the Debtors or the Liquidating Debtors, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Debtors, as applicable; (iv) any action for compensation for damages incurred by the Debtors; (v) any equitable subordination actions against Creditors; and (vi) the Mealing Litigation.  Notwithstanding anything herein to the contrary, General Litigation shall not include any claims, rights or causes of action of the Debtors or their estates against Jenkins Goodman Neuman & Hamilton LLP or Schwartz & Cera LLP, as such are released herein.

71.    "General Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Debtors, as applicable, from all or any portion of the General Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment

or otherwise. If any General Litigation is pursued on a contingent fee basis, the General Litigation Recovery will be net of any contingent fee paid to legal counsel and such contingency counsel shall be paid (and costs and expenses reimbursed) from first dollars received with respect to any such General Litigation Recovery, notwithstanding anything herein to the contrary.

72.    "Governmental Bar Date" means July 20, 2009.

73.    "Governmental Unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District Court, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

74.    "Holder" means an Entity holding a Claim or Equity Interest.

75.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

76.    "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Debtors and subject to the other provisions set forth herein.

77.    "Insider" means an insider of any Debtor, as defined in section 101(31) of the Bankruptcy Code.

78.    "Inter-Debtor Claims" means any Claims held by a Debtor(s) against another Debtor(s).

79.    "Interim Fee Order" means the "Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals" [Docket No. 92] entered by the Bankruptcy Court on February 5, 2009.

80.    "Judgment" means a monetary judgment in the amount of $2,550,000.00 in favor of the PA Class Claimants against American Corrective Counseling Services, Inc. in the form of Exhibit A attached to the Plan.

81.    "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind) to secure payment of a debt or performance of an obligation.

82.    "Litigation Designee" means LLCP, or such other person or entity designated by LLCP and identified in the Plan Supplement.

83.    "Liquidating Debtors" means the Debtors on and after the Effective Date.

84. "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtors or the Liquidating Debtors, as applicable, upon the sale, transfer, assignment or other disposition of the Plan Assets.

85. "LLCP" means Levine Leichtman Capital Partners III, L.P.

86. "LLCP Deficiency Claim" means the Claim of LLCP in the amount of $10,324,990.13 plus Allowed attorneys' fees, and shall be separate and apart from any claims which may arise in favor of LLCP and/or the Litigation Designee after the Effective Date in connection with any General Litigation Recovery. The LLCP Deficiency Claim is an Allowed Claim.

87. "Mealing Claims" means any claims that have been or could be asserted by LLCP against any of the defendants in the Mealing Litigation.

88. "Mealing Litigation" means *Levine Leichtman Capital Partners III, L.P. v. Mealing et al.*, Case No. BC 401567 (Cal. Super. Ct.), filed on November 7, 2008, and any similar rights, claims or causes of action, pending or threatened, of LLCP against any of the defendants in the Mealing Litigation.

89. "NCG" means National Corrective Group, Inc.

90. "Net Plan Proceeds" means all Plan Proceeds remaining after payment of all Plan Expenses.

91. "Other Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

92. "Other Secured Claims" means: (a) Claims that are secured by a lien on property in which the Estates have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; and (b) Claims which are Allowed under the Plan as a Secured Claim; but shall not include the LLCP Deficiency Claim.

93. "Other Unsecured Claim" means any Claim against the Debtors or their Estates that is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Other Priority Claim, Class Action Claim, LLCP Deficiency Claim, D&O Indemnification Claim, Subordinated Claim, or Inter-Debtor Claim.

94. "PA Class Action" means the class action or putative class action pending in federal district court in Pennsylvania, styled *Cataquet v. American Corrective Counseling Services*, Case No. 3:08-CV-1175 (M.D. Pa.).

95. "PA Class Action Claimants" means the Holders of PA Class Action Monetary Claims and PA Class Action Non-Monetary Claims.

96.    "PA Class Action Monetary Claims" means, as the context requires, on an individual basis, the Claim of each member or putative member in the class or putative class in the PA Class Action who paid money to, or for the account of, the Debtors in connection with or on account of a bad check diversion program conducted by the Debtors prior to the Petition Date, and, on an aggregate basis, the Claims of all such members or putative members in such class or putative class in the PA Class Action.

97.    "PA Class Action Non-Monetary Claims" means, as the context requires, on an individual basis, the Claim of each member or putative member in the class or putative class in the PA Class Action who did not pay any money to, or for the account of, the Debtors in connection with or on account of a bad check diversion program conducted by the Debtors prior to the Petition Date, and, on an aggregate basis, the Claims of all such members or putative members in such class or putative class in the PA Class Action.

98.    "Petition Date" means January 19, 2009.

99.    "Plan" means this First Amended Plan of Liquidation and any exhibits, schedules or supplement with respect thereto, either in their present form or as any of them may be altered, amended, modified or supplemented from time to time in accordance with the Plan (and at all times acceptable to LLCP), the Bankruptcy Code and the Bankruptcy Rules.

100.    "Plan Assets" means any and all real property or personal property assets, all rights or interests of the Debtors, whether tangible or intangible, and any Liquidation Proceeds realized therefrom, including without limitation, all Excluded Assets, all Excluded Liabilities, all Available Cash of the Debtors, all General Litigation, and any General Litigation Recovery. The Plan Assets do not include the Purchased Assets, which are no longer part of the Estates.

101.    "Plan Expenses" means the Deferred Professional Fee Claims and expenses incurred by the Liquidating Debtors, the Litigation Designee, or the Disbursing Agent following the Effective Date (including the fees and costs of attorneys and other professionals) for the purpose of (i) prosecuting or otherwise attempting to collect or realize upon the General Litigation; (ii) selling or collecting upon any of the Plan Assets or otherwise incurred following the Effective Date in connection with generating the Liquidation Proceeds; (iii) resolving Disputed Claims and effectuating distributions to Creditors under the Plan; (iv) calculating, processing, issuing, mailing, and otherwise handling distributions made pursuant to this Plan, or (v) otherwise implementing the Plan and closing these Chapter 11 Cases, including, but not limited to, post-Effective Date taxes (such as for income in the Disputed Claims Reserve) and wind-down expenses (such as document storage and final tax returns).

102.    "Plan Interest Rate" means the rate of interest determined by the Bankruptcy Court upon Confirmation, if necessary, for purposes of the application of section 1124 (impairment) or section 1129(b) of the Bankruptcy Code (Present Value), as the case may be, to the distributions to certain Creditors under the Plan. The Plan Interest Rate may be different for different Classes of Claims.

103.    "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

104.    "Plan Proceeds" means the aggregate amount of Cash or other funds of the Debtors available for payment of the Allowed Claims of Creditors, including, without limitation, (a) the Sale Proceeds, (b) all Available Cash of the Debtors, (c) any General Litigation Recovery, (d) any Liquidation Proceeds, and (e) the proceeds of any Plan Assets.  Under no circumstances will Plan Proceeds include any future sale of any of the Purchased Assets sold to the Purchaser pursuant to the Purchase Agreement.

105.    "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court prior to the Confirmation Hearing.

106.    "Present Value" means the present value as of the Effective Date of Cash payments made under the Plan by the Debtors using the Plan Interest Rate.

107.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

108.    "Professional" means an Entity (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

109.    "Professional Fee Claims" means those fees and expenses claimed by Professionals pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

110.    "Professional Fees Escrow Account" means the escrow account established pursuant to the DIP Amendment Order for payment of budgeted but unpaid Professional Fees that are entitled to the benefit of the "Carve-Out" from LLCP as defined in the Final DIP Order (as amended by the DIP Amendment Order) in the amounts set forth in the "Professional Fee Budget" approved by LLCP and annexed to the DIP Amendment Order.  The Professional Fees Escrow Account was initially funded by LLCP in an amount equal to $872,524.53.

111.    "Proof of Claim" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

112.    "Pro Rata" means proportionately so that, (A) with respect to a Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Claims of the Class in which the particular Claim is included (other than Claims disallowed by Final Order) to (ii) the amount of all Claims in that Class (other than Claims disallowed by Final Order); and (B) with respect to a proposed distribution on account of Allowed Claims in a particular Class, ratably, such that the dollar amount of the distribution that

will be made to each Holder in such Class represents the same percentage of the Allowed amount of such Holder's Allowed Claim as the percentage that the Allowed amount of such Holder's Allowed Claim is of the total amount of all Allowed Claims in such Class.

113.   "Purchase Agreement" means that certain Asset Purchase Agreement by and among NCG and the Debtors, dated as of April 11, 2009, as amended.

114.   "Purchased Assets" means substantially all of the Debtors' assets purchased by the Purchaser pursuant to the Purchase Agreement and Sale Order.

115.   "Purchaser" means NCG.

116.   "Rejection Bar Date" means the deadline by which any Entity whose Claim arises from a Court-approved rejection of an executory contract or unexpired lease, in accordance with section 365 of the Bankruptcy Code and/or pursuant to an order of the Bankruptcy Court, must file a Proof of Claim.  The Rejection Bar Date for each such Entity shall be before the later of:  (i) the Bar Date or (ii) thirty (30) days after the date of the order approving the Debtors' rejection of the applicable contract or lease, unless otherwise ordered by the Bankruptcy Court.

117.   "Responsible Officer" shall mean [-----------].

118.   "Sale" means the sale evidenced by the Purchase Agreement that was approved pursuant to the Sale Order.

119.   "Sale Order" means the "Order (I) Authorizing and Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Authorizing Payment of the Debtors' Lender With the Cash Proceeds Therefrom, (III) Approving Credit Bid or Winning Bid at the Auction, as Appropriate, and (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Fixing Cure Costs Associated Therewith in Connection With the Sale" [Docket No. 322] entered by the Bankruptcy Court on March 31, 2009.

120.   "Sale Proceeds" means the proceeds of the Sale that are due to the Debtors pursuant to the Second Amendment so long as the Effective Date has occurred and the Plan is acceptable to LLCP consisting of $200,000 per year for five (5) years (subject to setoff as provided for in the First Amendment and Second Amendment).

121.   "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs Filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to File pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

122.   "Second Amendment" means that certain Second Amendment to Asset Purchase Agreement, dated as of August 4, 2009, by and among the Debtors and NCG, a copy of

which is attached hereto as <u>Exhibit B</u>.  To the extent of any inconsistency between the terms of this Plan and the Second Amendment as it relates to the payment and timing of payment of Administrative Claims, the terms of the Second Amendment shall control.

123.    "<u>Second Interim Cash Collateral Order</u>" means the "Second Interim Cash Collateral Order, Pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1) and 364(e) of the Bankruptcy Code and Bankruptcy Rules 4001(c) and 4001(d), (A) Approving Cash Collateral Agreement and Stipulation (B) Authorizing the Debtors' Use of Cash Collateral Consistent Therewith, (C) Authorizing Debtors to Incur Postpetition Financing Pursuant DIP Loan Terms Agreement and (D) Scheduling a Final Hearing" [Docket No. 74] entered by the Bankruptcy Court on February 3, 2009.

124.    "<u>Solicitation Procedures Order</u>" means the Order (A) Approving First Amended Disclosure Statement; (B) Fixing the Voting Record Date; (C) Approving Solicitation and Voting Procedures with Respect to Chapter 11 Plan; (D) Approving Form of Solicitation Package and Notices; and (E) Scheduling Certain Dates in Connection therewith entered by the Bankruptcy Court on September 22, 2009 [Docket No. 637] approving the voting procedures motion (the "Voting Solicitation Procedures Motion").

125.    "<u>Subordinated Claim</u>" means (a) any Claim or portion of a Claim that has been subordinated for purposes of distribution pursuant to section 510(c) of the Bankruptcy Code; or (b) any Claim or portion of a Claim for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, to the extent that such Claim or portion thereof is not compensation for actual pecuniary loss.  Proofs of Claim Numbers (i) 1586 filed by Donald Mealing, Trustee of the Mealing Family Trust udt 8/23/95, and (ii) 1585 filed by Lynn Hasney are each a Subordinated Claim.

126.    "<u>Subsequent Distribution Date</u>" means any date after the Initial Distribution Date (a) that is (i) subject to other provisions of the Plan, no less frequent than once during each six (6) month period following the month of the Initial Distribution Date or (ii) otherwise ordered by the Bankruptcy Court, and (b) upon which the Liquidating Debtors make a distribution to any Holders of Allowed Other Unsecured Claims.

127.    "<u>Tax</u>" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

128.    "<u>Tax Claim</u>" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against any Debtor, including income and employment Taxes and any related penalties or interest.

129.    "<u>Unimpaired</u>" means, with respect to a Claim or Class of Claims, a Claim or Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

130.   "Unliquidated Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

131.   "U.S. Trustee" means the United States Trustee for the District of Delaware.

132.   "Voting Instructions" means the instructions for voting on the Plan contained in Article II.C of the Disclosure Statement and in the Ballots.

133.   "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a), this date is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

## ARTICLE 2

### ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES AND PRIORITY TAX CLAIMS

**A.     Introduction**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not placed the following Claims in a Class:

**B.     Administrative Claims**

Each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) shall receive from the first available funds from Available Cash, or Net Plan Proceeds, without interest, Cash equal to the Allowed amount of such Claim, unless such Holder shall have agreed to different treatment of such Claim, at the sole option of the Debtors or the Liquidating Debtors, as the case may be: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements that either have been or may be approved by the Bankruptcy Court between the Holders of such Claims and the Debtors or the Liquidating Debtors, as the case may be; (c) with respect to Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), until the entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases.

Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of such expenses pursuant to sections 327, 328, 330,

(none)

331, 503(b) or 1103 of the Bankruptcy Code that do not File such requests by the applicable deadline provided for herein shall be forever barred from asserting such Claims against the Debtors, their Estates, the Liquidating Debtors, or their successors or assigns, or their property. Any objection to Professional Fee Claims shall be Filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court; provided that such objection deadline is at least twenty (20) days after the filing and service of such final fee application. As provided herein, the Claims Reserve Account will include funds sufficient to cover the aggregate asserted amount of all disputed Administrative Claims. Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged.

## C.    <u>Professional Fee Claims</u>

The Liquidating Debtors shall pay the Professionals all of their respective accrued and Allowed fees and reimburse all of their respective expenses arising prior to the Effective Date plus post-Effective Date fees and expenses approved by the Responsible Officer. To the extent not covered by the Professional Fees Escrow Account, such payments shall be made from the first available funds from Available Cash or Plan Proceeds or as provided in the next paragraph.

Subject to the occurrence of the Effective Date and Allowance by the Bankruptcy Court, the Professional Fee Claims of following professionals shall be paid as set forth below (notwithstanding any rights of setoff under the First Amendment or Second Amendment):

1.    Friedman Kaplan Seiler & Adelman LLP (main bankruptcy counsel to the Debtors) shall be paid as set forth in the Second Amendment.

2.    Pepper Hamilton LLP (local bankruptcy counsel to the Debtors) shall be paid as set forth in the Second Amendment.

3.    Schwartz & Cera LLP (corporate counsel to the Debtors) shall be paid $20,922.50 as and when such amount becomes available from Net Plan Proceeds in full and complete satisfaction for all accrued and unpaid Professional Fee Claims as of the Effective Date. In consideration of reducing its Professional Fee Claims, the Debtors and their Estates shall release Schwartz & Cera LLP from any and all claims (including without limitation claims arising under Chapter 5 of the Bankruptcy Code).

4.    Jenkins Goodman Neuman & Hamilton LLP (special litigation counsel to the Debtors) shall be paid $49,297.67 as and when such amount becomes available from Net Plan Proceeds in full and complete satisfaction for all accrued and unpaid Professional Fee Claims as of the Effective Date. In consideration of reducing its Professional Fee Claims, the Debtors and their Estates shall release Jenkins Goodman Neuman & Hamilton LLP from any and all claims (including without limitation claims arising under Chapter 5 of the Bankruptcy Code).

Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date (other than for Bankruptcy Clerk's Office fees, the fees and expenses of the Claims Agent, and the U.S. Trustee's fees) must File and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The Liquidating Debtors may retain and compensate Professionals for services rendered following the Effective Date without order of the Bankruptcy Court. If the Liquidating Debtors object in writing to the payment of any compensation, such Disputed amount shall not be paid prior to the earlier of the resolution of such dispute or a ruling by the Bankruptcy Court.

**D.**     **Priority Tax Claims**

On the later to occur of (i) the Effective Date or (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Debtors shall pay to each Holder of an Allowed Priority Tax Claim from the first available funds from Available Cash, or Plan Proceeds, the Allowed amount of such Allowed Priority Tax Claim without interest from the Petition Date in the manner required by the Bankruptcy Code.

**ARTICLE 3**

**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.**     **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtors pursuant to the Plan, is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Other Priority Claims | Impaired | Entitled to Vote |
| Class 2A – CFI Class Action Monetary Claims | Impaired | Entitled to Vote |
| Class 2B – CFI Class Action Non-Monetary Claims | Impaired | Entitled to Vote |
| Class 3A – PA Class Action Monetary Claims | Impaired | Entitled to Vote |
| Class 3B – PA Class Action Non-Monetary Claims | Impaired | Entitled to Vote |
| Class 4A – Other Unsecured Claims | Impaired | Entitled to Vote |
| Class 4B – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 5 – LLCP Deficiency Claim | Impaired | Entitled to Vote |
| Class 6 – Inter-Debtor Claims | Impaired | Not Entitled to Vote |
| Class 7 – Subordinated Claims | Impaired | Not Entitled to Vote |
| Class 8 – Equity Interests | Impaired | Not Entitled to Vote |
| Class 9 – D&O Indemnification Claims | Impaired | Not Entitled to Vote |

1.    <u>Class 1 – Other Priority Claims</u>

(a)    Classification:  Class 1 consists of the Other Priority Claims against the Debtors.

(b)    Treatment:  The Liquidating Debtors shall pay from the first available funds from Available Cash or Plan Proceeds) the Allowed amount of each Class 1 Other Priority Claim to each Entity holding a Class 1 Other Priority Claim as soon as practicable following the later of (a) the Effective Date and (b) the date such Class 1 Other Priority Claim becomes an Allowed Claim (or as otherwise permitted by law).  The Liquidating Debtors shall pay each Entity holding a Class 1 Other Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; <u>provided, however</u>, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

(c)    Voting:  Holders of Class 1 Claims are Impaired and, therefore, each Holder of a Class 1 Claim is entitled to vote to accept or reject the Plan.

2.    <u>Class 2A – CFI Class Action Monetary Claims</u>

(a)    Classification:  Class 2 consists of the Claims of Holders of CFI Class Action Monetary Claims.

(b)    Treatment:

If either Class 2A or 2B do not vote to accept the Plan, then each Holder of an Allowed Class 2A CFI Class Action Monetary Claim shall receive (i) its Allowed Distribution Amount and (ii) 25% off the tuition cost of any bad check diversion program class attended by such Holder after the Effective Date (and not later than three (3) years after the Effective Date) conducted by NCG. Any calculation of the distributions to be made to the Holder of an Allowed Class 2A Claim shall be performed using such Holder's Allowed Calculation Amount.  The aggregate dollar amount of all distributions made to the Holder of an Allowed Class 2A Claim in accordance with the calculations performed using such Holder's Allowed Calculation Amount shall be such Holder's Allowed Distribution Amount.  In no event shall the Holder of an Allowed Class 2A